**MISSISSIPPI RIVER FUEL CORPORATION, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent,**

**Illinois Power Company, Laclede Gas Company, MidSouth Gas Company, Intervenors.**

**No. 15167.**

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 2, 1960.

Decided June 30, 1960.

Petition for Rehearing En Banc Denied Sept. 19, 1960.

Mr. Richmond C. Coburn, St. Louis, Mo., of the bar of the Supreme Court of Missouri, pro hac vice, by special leave of court, for petitioner. Mr. Spencer W. Reeder, Washington, D. C., was on the brief.

Mr. W. Russell Gorman, Asst. Gen. Counsel, F. P. C., with whom Messrs. Willard W. Gatchell, Gen. Counsel, F. P. C., and Cyril S. Wofsy, Atty., F. P. C., were on the brief, for respondent. Mr. Howard E. Wahrenbrock, Sol., F. P. C., also entered an appearance for respondent.

Mr. Richard D. Shewmaker, St. Louis, Mo., of the bar of the Supreme Court of Missouri, pro hac vice, by special leave of court, with whom Mr. J. David Mann, Jr., Washington, D. C., was on the brief, for intervenor Laclede Gas Co., argued for all intervenors. Mr. William W. Ross, Washington, D. C., also entered an appearance for intervenor Laclede Gas Co.

Messrs. Robert S. Hunt, Chicago, Ill., and G. Duane Vieth, Washington, D. C., were on the brief for intevenor Illinois Power Co.

Messrs. Harry A. Poth, Jr., and Richard M. Merriman, Washington, D. C., were on the brief for intervenor Mid-South Gas Co.

Before PRETTYMAN, Chief Judge, and BAZELON and BURGER, Circuit Judges.

BURGER, Circuit Judge.

This is an appeal by Mississippi River Fuel Corp. (Mississippi), a natural gas pipeline company, from an order of the Federal Power Commission (Commission) directing Mississippi to make certain rate reductions, and pay certain refunds, to the intervenors, Illinois Power Co., Laclede Gas Co., and MidSouth Gas Co.

The controversy arises out of Mississippi's position as middleman in the sale of gas. Mississippi purchases gas from United Gas Pipe Line Co. (United) and in turn sells gas to utility customers, among them the intervenors. It is obvious, of course, that the cost of gas supplied by United to Mississippi has a direct impact on the price of that gas to the intervenors. The present problem emerges from the fact that Mississippi was engaged in rate disputes during approximately the same period both as to the cost of its gas from United, and as to the price which it sought to charge intervenors on resale. These proceedings were carried on independently. A narration of their history is necessary.

### Mississippi v. Intervenors

During the years 1951 and 1952 Mississippi filed two proposed rate increases for gas sold to intervenors.[1] Both increases were eventually disallowed by the Commission.[2] However, disallowance of the second increase, which envisioned a tariff of $2.00/mcf demand and .18/mcf commodity charge, was reversed by the Third Circuit,[3] and the cause remanded. Mississippi was permitted to move that the increase be made effective at once, subject to refund, and subject also to the Commission's right to hold hearings on the new schedule.

Mississippi then requested a settlement conference and a settlement was ultimately negotiated (Mississippi-Intervenor settlement) which set an applicable rate, effective April 10, 1953, of $1.80 demand and a .17 commodity charge.[4] (Schedule F–1). One of the difficulties met in gaining this agreement was that Mississippi was even then embroiled in a rate dispute with United, its principal supplier. United was seeking a higher rate schedule (Dockets G–2019 and G–1142) for gas sold to Mississippi and, in fact, the higher rates were being collected subject to refund. Since the possibility existed that this higher tariff might be reduced after the extensive hearings being held in those dockets, two provisions were inserted in the Mississippi-Intervenor settlement decree which in substance provided:

(a) If United was required by the Commission in Docket G–2019 to refund to Mississippi any part of the charges then being paid to United by Mississippi, Mississippi would refund to its utility customers that portion of the refund attributable to gas purchased from United by Mis-

---

1. The first increase was sought February 28, 1951, requesting a rate of $1.60/mcf demand and .15/mcf commodity charge. Docket No. G–1641. This was put into effect subject to refund. The Commission later rejected this rate, and reinstated the previous schedule. Matter of Mississippi River Fuel Corp., 11 F.P.C. 288 (Aug. 4, 1952). The second increase was sought April 30, 1952. Docket No. G–2153.

2. Matter of Mississippi River Fuel Corp., 11 F.P.C. 288 (Aug. 4, 1952) (first increase); Commission order, Docket No. G–2153, 11 F.P.C. 1029 (May 29, 1952) (second increase).

3. Mississippi River Fuel Corp. v. Federal Power Commission, 3 Cir., 202 F.2d 899, certiorari denied, 1953, 345 U.S. 988, 73 S.Ct. 1138, 97 L.Ed. 1397.

4. Matter of Mississippi River Fuel Corp., 12 F.P.C. 151 (June 3, 1953).

sissippi and resold to Mississippi's customers. (Paragraph VI.) [5]

(b) If United was required to reduce its rates charged to Mississippi as a result of the proceedings in Dockets G–2019 and G–1142, Mississippi would then file proportionately reduced schedule F–1 rates so as to pass the proper amount of United's reduction on to the intervenors. (Paragraph VII.) [6]

This settlement was approved by the Commission on June 3, 1953,[7] and from April 10, 1953, onward Mississippi charged intervenors on the basis of the F–1 schedule. No increase in that rate was sought by Mississipi until May 1, 1958, which increase went into effect on November 1, 1958. (Docket No. G–15174).

### Mississippi v. United

The Dockets mentioned in the Mississippi-Intervenor settlement evolved out of disputes between United and Mississippi regarding the propriety of United's gas charges. Docket G–1142 was an investigation of United's rate schedule begun by the Commission in 1948. One of the rates there under scrutiny was Schedule PL–2, which called for payment by Mississippi of $1.30/mcf demand charge per month and .12½/mcf commodity charge. In addition, due to peculiarities not here pertinent, Mississippi was also being billed for a portion

of the United gas it received under another schedule, PL–3. This rate was the result of a filing made by United in Docket G–2019 seeking a tariff of .65/mcf demand and .09/mcf commodity charge.[8] Though hearings regarding the propriety of both the PL–2 and PL–3 rates were in progress, both rates were in force at the time the Mississippi-Intervenor settlement was being negotiated. It was the possibility of their reduction that led to the inclusion in that settlement of the provisions whereby reduction in United's PL–2 and PL–3 rates would obligate Mississippi to reduce its own F–1 Schedule to the intervenors.

The hearings regarding rates PL–2 and PL–3 culminated in a Commission order of November 8, 1955, which (1) replaced the two United-Mississippi rates with one uniform tariff; and (2) ordered this uniform tariff to be .75/mcf demand and .10/mcf commodity charge.[9] (Schedule PL–C). Though this rate represented a substantial reduction of the old PL–2 rate, Mississippi nevertheless petitioned this court for review.[10] We vacated the November 8 order, and remanded the cause to the Commission.[11]

During the subsequent proceedings a settlement was finally reached between United and Mississippi in which Mississippi agreed to accept the PL–C rate as embodied in the Commission's November 8 order. That rate retroactively replaced

---

5. "If United Gas Pipe Line Company is required by any final order of the Commission which is accepted by United or becomes final in any court review or otherwise, in the proceedings in Commission docket No. G–2019 to refund to Mississippi any part of the charges now being collected under bond, such portion, if any, of such refund attributable to natural gas purchased from United by Mississippi after 7 a.m. on April 10, 1953 * * * and resold to the utility customers of Mississippi, unless otherwise ordered by the Commission, shall be refunded to such utility customers. * * " 12 F.P.C. at 154–55.

6. See text, infra.

7. 12 F.P.C. 151.

8. The PL–3 rate had gone into effect, subject to refund, on January 3, 1953. See Commission Order, Docket No. G–2019, 12 F.P.C. 1162 (Aug. 1, 1952).

9. Matter of United Gas Pipe Line Co., 14 F.P.C. 353, 406 (July 21, 1955).

10. The PL–2 rate had been $1.30 demand and .12½ commodity charge. Thus, though the PL–C settlement rate (.75 demand and .10 commodity) benefited Mississippi as to the PL–2 rate, it was higher than the PL–3 rate (.65 demand and .09 commodity) involved on Docket G–2019.

11. Mississippi River Fuel Corp. v. Federal Power Commission, 102 U.S.App. D.C. 238, 252 F.2d 619, certiorari denied 1957, 355 U.S. 904, 78 S.Ct. 331, 2 L.Ed.2d 260.

United's PL-2 and PL-3 rates as of November 8, 1955, and Dockets G-1142 and G-2019 were finally terminated by the Commission's United-Mississippi settlement order of September 11, 1958.[12]

### The Present Controversy

The retroactive tariff reduction embodied in Mississippi's acceptance of schedule PL-C (.75/mcf and .10/mcf) meant that United was obligated to refund certain amounts to Mississippi, those amounts being the difference between the PL-C rate and the charges collected under the superseded PL-2 and PL-3 rates after the effective date of the PL-C schedule. (November 8, 1955). Similarly, the termination of Dockets G-1142 and G-2019 triggered Mississippi's obligation under the Mississippi-Intervenor settlement to reduce its F-1 schedule and credit Intervenors with the proper proportion of that reduction.

Here, however, the time factor becomes highly important. Though the United-Mississippi accord did not become final until September 11, 1958, the PL-C charges therein adopted were made retroactive to November 8, 1955. In the interval between the retroactive date of the PL-C schedule vis-a-vis United and Mississippi (November 8, 1955), and the date upon which that schedule was actually promulgated (September 11, 1958), United had already moved for another increase as against Mississippi which would bring its charges above the superseded PL-2 and PL-3 rates, thus ending whatever benefits Mississippi gained by virtue of the United-Mississippi settlement. This new rate went into effect, subject to refund, on April 1, 1956 (Docket G-9547) and the Commission has not yet passed on its propriety. Thus, the only period in which the United-Mississippi PL-C rate was actually operative was the months between the effective date of that rate (November 8, 1955) and the date upon which the new United rate in Docket G-9547 went into effect (April 1, 1956). We have, then,

this question: Is Mississippi obligated to reduce its tariff to intervenors, and refund the proper amounts under that reduced schedule, *only* from the period November 8, 1955 to March 31, 1956? Or is it obligated to reduce that tariff, and make the full refunds under it, from the period November 8, 1955 to November 1, 1958, the date when the Commission allowed Mississippi provisionally to increase its charges to intervenors pursuant to Mississippi's request?

### Contentions of the Parties

Shortly after the Commission's settlement order promulgating the United-Mississippi PL-C rate, Mississippi notified the Commission by letter of its intention to comply with the terms of the Mississippi-Intervenor settlement by making the necessary refunds. It agreed to refund to intervenors the total of $105,750.98, which represents the proper amount due them for the period November 8, 1955 through December 31, 1955. This amount is not in dispute. Similarly, it proposed to reduce its F-1 schedule to Intervenors for the closed end period January 1, 1956 through March 31, 1956, and make the resulting refund for that period. However, it maintained that under the . Mississippi-Intervenor settlement it was not obligated to reduce the F-1 schedule beyond April 1, 1956 since from that time forward it was obliged to pay the rate increase granted United in Docket G-9547. This appeal turns on whether Mississippi's contention is correct on this critical point.

The intervenors responded to this proposal, arguing to the Commission that Mississippi could not limit its rate reduction solely to the period November 8, 1955 through March 31, 1956. They contend that the Mississippi-Intervenor agreement obligates Mississippi to reduce its F-1 schedule in accordance with the United-Mississippi settlement rate, *regardless of whether United is subsequently allowed a provisional rate increase.* In short, the intervenors contend that unless and until Mississippi

---

12. United Gas Pipe Line Co., Docket Nos. G-1142 and G-2019, 20 F.P.C. 349.

gains a rate increase as against them by the regular procedures prescribed by the Natural Gas Act,[13] it cannot indirectly effect a rate increase by refusing to lower the F–1 schedule as it expressly agreed to do in the Mississippi-Intervenor settlement.

### Action of The Commission

On January 23, 1959 the Commission issued the order here under review approving the Mississippi refund of $105,750.98 for the period November 8, 1955 through December 31, 1955, but refusing Mississippi permission to limit the effectiveness of its F–1 schedule reduction to the period January 1, 1956 through March 31, 1956. The Commission reasoned that at the conclusion of the United-Mississippi dispute, Mississippi was required to file new schedule F–1 rates as against the intervenors which were *thereafter to continue in effect* until changed by a "proper rate change proposal under the [Natural Gas] Act." It characterized Mississippi's proposal as "tantamount to a claim that we should permit reduced Rate Schedule F–1 rate [*sic*] to be applicable for a short period, and then to be automatically followed by a return to the $1.80 demand charge and 17 cents commodity charge rate agreed-upon by the parties," and refused to sanction an interpretation of the Mississipi-Intervenor agreement granting what, in effect, would be automatic rate escalation. It ordered Mississippi to reduce the F–1 rate from January 1, 1956 through October 31, 1958 and to make the appropriate refunds at 6% interest.

The Commission, in response to Mississippi's request for rehearing, stayed the effect of its order until April 2, 1959, when it substantially readopted its initial position. Mississippi was denied a further rehearing, and this appeal followed.

The resolution of the issues presented turns upon the interpretation of the Mississippi-Intervenor settlement provisions, since whatever obligation Mississippi has undertaken must be measured by the terms of that settlement. The pertinent paragraph of that settlement (paragraph VII) [14] stated:

"If United Gas Pipe Line Co. is required by any final order or orders of the Commission, which are accepted by United or become final in any court review or otherwise, *in the proceedings in Commission docket Nos. G–1142 and G–2019,* or either of them, to make any reduction in the rates to be charged or collected for natural gas sold by United to Mississippi, then Mississippi, unless otherwise ordered by the Commission, *shall* file with the Commission changes in its rate schedule F–1 to reduce the rates therein provided so as to pass on to its utility customers the proper amount * * * of any such rate reduction ordered and made effective by the Commission in respect of United's rates. The said change in Mississippi's rate schedule F–1 is to be filed within 60 days after the date on which the order reducing United's rates becomes final, *to be effective as of the date as of which*

13. Section 4(d) of the Act provides that unless otherwise ordered by the Commission, no rate change shall be made by any natural gas company except after 30 day notice to the Commission. Such notice shall be given by filing with the Commission new schedules stating the changes to be made. 52 Stat. 823 (1938), 15 U.S.C.A. § 717c(d). Section 4(e) of the Act sets out the procedures whereby the Commission may challenge such a filing, and suspend the rate for 5 months pending hearing. 52 Stat. 823 (1938), 15 U.S.C.A. § 717c(e).

14. Paragraph VI is inapplicable in the present controversy. That paragraph obligated Mississippi to refund to intervenors any appropriate amounts gained by virtue of a subsequent decrease in the United-Mississippi PL–3 rate in Docket No. G–2019. (.65 demand and .09 commodity). However, the United-Mississippi settlement rate (.75 demand and .10 commodity) was higher than this PL–3 rate. Mississippi gained no refund in Docket G–2019 and thus incurred no obligation under paragraph VI.

*the reduction in United's rates is made effective.* [Here follows a formula by which the proper amounts are to be calculated.]

"If, in ordering such rate reduction in United's rates either the demand charge or commodity charge is increased, then the reduction to be made by Mississippi in the demand charge and commodity charge in rate schedule F–1 shall be varied to the extent necessary to carry out the purpose of having Mississippi pass on to its utility customers only the proper proportion of any such overall reduction of United's rates." (Emphasis added). 12 F.P.C. at 155.

■ It is important to note, at this point, the legal effect of Opinion No. 253 in Docket G–2153, the order which made the Mississippi-Intervenor settlement rate F–1 effective. That opinion and order was the express vehicle which instituted the F–1 rates as between Mississippi and the Intervenors. However, the order specifically built into the F–1 rate *an automatic downward revision,* the amount of which was dependent upon a future event, *i. e.,* the Commission's final order terminating the United-Mississippi dispute in Dockets G–1142 and G–2019. Undoubtedly the Commission can promulgate a rate subject to automatic retroactive revision dependent upon a future event. See Kerr-McGee Oil Industries, Inc. v. Federal Power Commission, 10 Cir., 1958, 260 F.2d 602; Phillips Petroleum Co. v. Federal Power Commission, 10 Cir., 1955, 227 F.2d 470, certiorari denied, Mich. Wis. Pipe Line Co. v. Phillips Pet. Co., 1956, 350 U.S. 1005, 76 S.Ct. 649, 100 L.Ed. 868; Natural Gas Pipeline Co. v. Federal Power Commission, 3 Cir., 253 F.2d 3, certiorari denied, Dorchester Corp. v. Natural Gas Pipeline Co., 1958, 357 U.S. 927, 78 S.Ct. 1372, 2 L.Ed.2d 1370. Cf. Cities Service Gas Producing Co. v. Federal Power Commission, 10 Cir., 233 F.2d 726, cer-

tiorari denied, 1956, 352 U.S. 911, 77 S.Ct. 149, 1 L.Ed.2d 118. Yet the *only* contingency upon which the reduction hinged was the one specifically expressed, *i. e.,* United's reduction in its rates to Mississippi as embodied in a final Commission order. Nothing expressly or impliedly made the duration of that rate reduction contingent upon a subsequent *increase* in United's rates to Mississippi sought in a proceeding other than those named.

■ By tying United's later increase into the F–1 schedule, Mississippi is attempting to inject an automatic escalated revision into that schedule to offset its increased costs incurred due to the April 1, 1956 United rate increase. This it cannot do. No such significant rate change was envisioned by the Mississippi-Intervenor settlement agreement and decree. The Commission put the F–1 rate into effect, along with its automatic decrease, from April 10, 1953. No further upward revision of that rate could be had except by proceedings under Secs. 4(d), (e) of the Natural Gas Act [15] and the accompanying Regulations.[16] If at the time United sought its April 1 increase Mississippi concluded that a corresponding rise in its resale price was necessary, its remedy was to move at that time for a higher rate to the Intervenors. It cannot now read into the Mississippi-Intervenor settlement terms which are not there, *viz.,* provision for an automatic escalation in its resale schedule in the event of a subsequent United rate increase.

Mississippi vigorously argues that because it accepted the United settlement rate only for the period November 1, 1955 through March 31, 1956, the limited period for which that rate was actually operative must also be read into the Mississippi-Intervenor settlement. Here, however, petitioner fails to differentiate between the *fact* that the United rate was reduced and the period of *time* for which that reduction was in

15. See note 13, supra.

16. 13 F.R. 6373 (1948), 18 C.F.R. § 154.-21 (1949).

force. The sole pertinent fact in the United-Mississippi settlement that had relevance to the Mississippi-Intervenor agreement was the fact that a reduction of United's rates to Mississippi was there fixed. Nothing in the Mississippi-Intervenor accord limits the period for which that reduction runs, nor provides for a cessation of Mississippi's obligation to intervenors in the event the United-Mississippi settlement rate is superseded.

The reason for the absence of such a limitation is obvious. At the time the Mississippi-Intervenor settlement was negotiated it was not certain whether any reduction in United's rates would be allowed Mississippi. Nevertheless, if a reduction was ordered, both the intervenors and Mississippi agreed that the intervenors would receive a refund covering the excess charge. However, it does not follow that because the intervenors provided for a reduction in their rates, they also agreed to an automatic self-executing escalation of those rates in the event Mississippi was subjected to a subsequent United rate increase. The Mississippi-Intervenor settlement is not cast in the terms of the familiar escalator clause common in this industry. See, e. g., Cities Service Gas Producing Co. v. Federal Power Commission, supra; Phillips Petroleum Co. v. Federal Power Commission, supra; Kerr-McGee Oil Industries, Inc. v. Federal Power Commission, supra. To accept petitioners interpretation of the Mississippi-Intervenor settlement would be to assert that the intervenors agreed (1) to an automatic increase in its rates immediately upon a subsequent United rate increase; (2) to allow the *amount* of that raise to be dictated by agreement between United and Mississippi, and (3) to surrender its bargaining power as to the price it would pay Mississippi to negotiations between United and Mississippi in proceedings in which it was not a party. We cannot read these drastic terms into an agreement which simply provides for a

rate reduction to intervenors in the event its supplier obtains certain benefits.

It therefore follows that in failing to file reductions in the F–1 rate beyond the date upon which United gained its April 1, 1956 increase, Mississippi is attempting to procure a unilateral rate increase without following the procedures of the Natural Gas Act. United Gas Pipe Line Co. v. Mobile Gas Service Corp., 1956, 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373; Natural Gas Pipeline Co. v. Federal Power Commission, supra; Tyler Gas Service Co. v. Federal Power Commission, 101 U.S.App.D.C. 184, 247 F.2d 590, certiorari denied, 1957, 355 U.S. 895, 78 S.Ct. 263, 2 L.Ed.2d 193. The Commission was correct in deciding that Mississippi was obligated to reduce its F–1 schedule in accordance with the Mississippi-Intervenor settlement for the period November 1, 1955 through October 31, 1958, and to make the necessary refunds.

■ We cannot agree with Petitioner's contention that the order here under review amounts to a retroactive rate reduction in violation of the rule laid down in Hope Natural Gas Co. v. Federal Power Commission, 4 Cir., 1952, 196 F.2d 803. The order which obligated Mississippi to reduce its F–1 rate was not the order here under review, but rather the June 1953 order pursuant to the Mississippi-Intervenor settlement. As mentioned above, that order merely set a rate subject to downward revision dependent upon the outcome of the United-Mississippi dispute. It is obvious that the precise amount of the reduction, and the refunds necessary under it, could not be ascertained until Dockets G–2019 and G–1142 were concluded. The present order simply supplemented the ordering provisions of the June 1953 order by setting out the precise amount of the refund and the change in the rate. The Commission has ample power to issue such a supplemental order under Sec. 16 of the Act.[17]

17. "The Commission shall have power to perform any and all acts, and to pre-

scribe, issue, make, amend, and rescind such orders, rules, and regulations as it

■ Mississippi also questions the power of the Commission to order the refunds to intervenors at 6% interest. It is true that the Mississippi-Intervenor settlement decree did not provide for interest payments on amounts subject to refund. But it is also true that for an appreciable period the intervenors paid higher rates than were warranted, and Mississippi has had the use of the overpayments. The situation is little different from what it would be if the Commission, after a Sec. 4(e) investigation, had determined that rates then in effect were too high and ordered refunds. The Natural Gas Act in that situation clearly allows a refund with interest.[18] We hold the interest payments are allowable.[19]

■ Mississippi finally contends that the present order was promulgated without a hearing, and is thus invalid. We see no need for an evidentiary hearing in these circumstances. The only question before the Commission was whether Mississippi's proposed refund and rate reduction was in full compliance with the terms of the Mississippi-Intervenor settlement. This was a question of law, dependent upon interpretation of the settlement agreement. Mississippi's interpretation was plainly stated in its letter to the Commission, and later in briefs submitted on its petition for rehearing. The intervenors pressed a different viewpoint. The issue was clearly and fully stated and no questions of fact were presented. In essence, all petitioner lost was the privilege of making an oral argument to the Commission. This does not amount to a deprivation of due process, nor violation of the Natural Gas Act. Sun Oil Co. v. Federal Power Commission, 5 Cir., 256 F.2d 233, certiorari denied, 1958, 358 U.S. 872, 79 S.Ct. 111, 3

L.Ed.2d 103; cf. Federal Communications Commission v. WJR, The Goodwill Station, Inc., 1949, 337 U.S. 265, 69 S.Ct. 1097, 93 L.Ed. 1353.

The order will be

Affirmed.

---

may find necessary or appropriate to carry out the provisions of this Act." 52 Stat. 830 (1938), 15 U.S.C.A. § 717o.

18. 52 Stat. 823 (1938), 15 U.S.C.A. § 717c(e).

19. Cf. United Gas Pipe Line Co. v. Mobile Gas Service Corp., 1956, 350 U.S. 332, 76 S.Ct. 373, citing Baltimore & Ohio

RR v. United States, 1929, 279 U.S. 781, 49 S.Ct. 492, 73 L.Ed. 954; Natural Gas Pipeline Co. v. Federal Power Commission, 3 Cir., 253 F.2d 3, certiorari denied Dorchester Corp. v. Natural Gas Pipeline Co., 1958, 357 U.S. 927, 78 S.Ct. 1372, 2 L.Ed.2d 1370; Northern Natural Gas Co. v. Federal Power Commission, 8 Cir., 1954, 215 F.2d 892.