## Norfolk

HENRICO COUNTY SCHOOL BOARD

v.

SHARON J. BOHLE

No. 0781-90-2

Decided July 7, 1992

COUNSEL

Charles F. Midkiff (Steven H. Theisen; Midkiff & Hiner, P.C., on briefs), for appellant.

George E. Allen, III (Allen, Allen, Allen & Allen, on brief), for appellee.

OPINION

**WILLIS, J.**—Sharon J. Bohle was injured in a job-related accident for which her employer, Henrico County School Board, accepted workers' compensation liability. The Workers' Compensation Commission* entered an appropriate award. Thereafter, Ms. Bohle recovered $1,100,000 from the third-party tortfeasor who caused her job-related injuries. In doing so, she incurred attorney's fees of $275,000 (twenty-five percent) and expenses of $4,911.24.

Prior to the third-party settlement, the employer had paid $514,545.34 in benefits, for which it claimed a lien. Upon disbursement of the third-party recovery, the attorney's fees and miscellaneous expenses were paid in full. The employer received $383,600.72 ($514,545.34 less the proportion of attorney's fees and expenses attributable to that recovery). Ms. Bohle received $424,532.41 ($585,454.66 less the proportion of attorney's fees and expenses attributable to that recovery).

* Formerly the Industrial Commission of Virginia. Effective October 1, 1991, Title 65.1 was recodified as Title 65.2. All references in this opinoin are to Title 65.1, in effect at the time the Commission's decision was rendered in this case.

By letter of December 8, 1989, counsel for Ms. Bohle, with a copy to counsel for the employer, notified the commission of the amount and distribution of the third-party recovery, and requested an award suspending further compensation payments by the employer until Ms. Bohle had incurred and satisfied out of her funds compensation benefits equaling $318,399.31 (seventy-five percent of $424,532.41). On December 27, 1989, the commission entered an order to that effect. By letter dated December 29, 1989, with a copy to counsel for Ms. Bohle, counsel for the employer agreed that a suspension should be ordered, but asserted that it should continue until the entire net proceeds in Ms. Bohle's hands had been offset. By letter dated January 8, 1990, counsel for the employer sought full commission review of the December 27, 1989 order and requested oral argument. Upon briefs submitted by the parties, but without taking evidence or hearing oral argument, the commission, by order dated April 23, 1990, affirmed the decision of the deputy commissioner and ordered that "no further compensation benefits or medical expense would be due until such time as the entitlement under compensation exceeds $318,399.31."

On appeal, the employer contends (1) that the commission erred in denying to the employer a hearing regarding the entry of an order suspending the payment of compensation benefits to the claimant, and (2) that the commission erred in suspending payment of compensation benefits to Ms. Bohle only until future benefits exceeded seventy-five percent of her actual net cash recovery. We find that the commission acted properly in deciding the case without further hearing. However, we find that it erred in calculating the amount of indemnity to which the employer was entitled and in determining the method by which that indemnity should be realized. On those grounds, we reverse and remand the case to the commission.

I.

The employer first contends that the commission erred in denying it the opportunity to present evidence and advance oral argument. The evidentiary record submitted to the commission was plain and complete. The facts were not in dispute. Neither party requested an evidentiary hearing.

Upholding the denial of oral argument on a briefed point of law, the Supreme Court has said:

Where a question of law is all that needs to be resolved it has often been held that the requirements of procedural due process are met where the party seeking review has the opportunity to state his views in writing.

\* \* \* \*

All [the appellant] lost was the chance to restate that which was already adequately stated in his letter and other written communications to the Commission.

*James v. Arlington County Bd. of Supervisors*, 226 Va. 284, 290, 307 S.E.2d 900, 903 (1983). We find no error in the commission's decision of this case based on the parties' briefs, without oral argument.

## II.

The employer next argues that by limiting the suspension of its liability for further payments to an offset equal to three-fourths of the net amount of third-party settlement proceeds received by Ms. Bohle, the commission denied to it its full indemnity entitlement and effected a double recovery to Ms. Bohle. We agree. In reaching this conclusion, we analyze the authorities controlling the employer's right to indemnity and its liability for proportionate costs of recovery, the application of those authorities in determining the amount of indemnity to which the employer is entitled, and the application of those authorities in determining the manner in which the employer should realize that indemnity.

### A. *THE CONTROLLING AUTHORITIES*

A claim against an employer under this title for . . . benefits shall operate as an assignment to the employer of any right to recover damages which the injured employee . . . may have against any other party for such injury . . . , and such employer shall be subrogated to any such right. . . .

Code § 65.1-41.[1]

In any action, or claim for damages, by an employee, . . . if a recovery is effected, . . . the reasonable expenses and rea-

---

[1] Now Code § 65.2-309(A).

sonable attorney's fees . . . shall be apportioned pro rata between the employer and the employee, . . . as their respective interests may appear.

Code § 65.1-43.[2]

Until recently, there has been no Virginia appellate authority concerning the identification of the respective interests which govern the assessment of attorney's fees and costs under the foregoing statutes. However, in *Sheris v. Travelers Insurance Co.*, 491 F.2d 603 (4th Cir.), *cert. denied*, 419 U.S. 831 (1974), a federal court applied Virginia law to a workers' compensation death award which exceeded a third-party recovery. Judge Butzner wrote:

> Several courts . . . have interpreted apportionment statutes similar, though not identical, to Virginia's. They have ruled that apportionment must be based on the full liability of the employer — the compensation it has paid in the past and the amount that it would be required to pay in the future were it not for the employee's successful suit.

> The reasoning of these cases is sound. It rests on the conclusion that there is no rational distinction between the benefit an employer enjoys from being reimbursed for compensation payments already made and the benefit of being released from the obligation to make future compensation payments. Therefore, as one court has pointed out, it is reasonable to assume that the legislature intended the attorney's fee to be prorated to the extent of the benefits the employer received from the recovery against the wrongdoer. Stated negatively, there is nothing to indicate that when the Virginia legislature directed proration of the fees as the interests of the parties may appear, it intended that only part of the interest of the compensation carrier should be taken into account.

*Id.* at 606 (footnotes omitted).

In *Circuit City Stores, Inc. v. Bower*, 243 Va. 183, 413 S.E.2d 55 (1992), the Virginia Supreme Court considered the apportionment of attorney's fees and expenses with respect to a death claim. The workers' compensation award was $344 per week for a

---

[2] Now Code § 65.2-311.

period of five hundred weeks, a total of $172,000. There was a third-party recovery having a present value of $1,900,000. At the time of the third-party recovery, the employer had paid compensation benefits totaling $48,034.44, for which it asserted a lien. It sought reimbursement of this amount, less pro rata attorney's fees attributable thereto, in the distribution of the third-party recovery. Upholding the trial court's apportionment of attorney's fees based on the employer's exoneration from its full potential liability, the Supreme Court adopted with approval the reasoning in *Sheris* that no rational distinction can be made between the benefit of being reimbursed for payments made and the benefit of being released from the obligation to make future payments.

■■■ The foregoing authorities make plain the following principles which govern our decision in this case. The employer is entitled to be indemnified out of the third-party recovery to the extent that it has made or will make payments of compensation to or for the claimant. The amount received by the employer in indemnity is to be reduced by attorney's fees and expenses incurred by the claimant in effecting the third-party recovery, in the proportion which the amount of indemnity bears to the total third-party recovery. So much of the third-party recovery as is not required to indemnify the employer is the property of the claimant, and remains so until it becomes liable for indemnity. The claimant must pay from his share the pro rata attorney's fees and costs attributable to that part of the third-party recovery that is not liable for indemnity.

## B. *THE AMOUNT OF OFFSET*

We agree with the employer that in calculating the future offset to which the employer is entitled, and hence the point at which the suspension of benefits would terminate, the commission effected a double recovery to the claimant. The commission set this figure at $318,399.31 (three-quarters of $424,532.41). It ordered that when future benefits in this amount had accrued and been satisfied by the claimant out of the net third-party proceeds in her hands, full compensation benefits should resume. Simple mathematical calculations demonstrate the error in the commission's award.

If, at the time of distribution of the third-party recovery, the employer had already paid benefits equaling or exceeding

$1,100,000, it would have been entitled to receive in indemnity the full $1,100,000, less $279,911.24 attorney's fees and expenses. Thus it would have recovered in indemnity $820,088.76. Under the commission's order, when $1,100,000 of compensation benefits have accrued, the employer will have been indemnified only $702,000.03, realized as follows:

| | | |
|---|---|---|
| Net Recovery on Third-Party Distribution | $ 514,545.34 | |
| Less 25% Attorney's Fee & Pro Rata Costs | 130,944.62 | |
| Net from Third Party Settlement | | $ 383,600.72 |
| Suspension from Liability for Benefits | | +318,399.31 |
| Total | | $ 702,000.03 |

Correspondingly, under the commission's calculation, when compensation benefits totaling $1,100,000 have accrued and been satisfied, the claimant will have received $1,206,133.10, realized as follows:

| | |
|---|---|
| Amount Paid before Third-Party Recovery | $ 514,545.34 |
| Net Proceeds Received from Distribution of Third-Party Recovery | 424,532.41 |
| Benefits Received by Resumption of Payments | 267,055.35 |
| Total | $1,206,133.10 |

The sum of $424,532.41, which came net into the claimant's hands upon distribution of the third-party recovery, was after payment of all attorney's fees and expenses. It was a net sum to which the claimant was entitled, free from any further attorney's fees or expenses. Likewise, it was a net sum liable for indemnity to the employer, free from further attorney's fees and expenses. Limiting the employer's right of indemnity to that net amount, rather than to the $585,454.66 of which it was originally a part, imposes thereby on the employer liability for the attorney's fees

and expenses incurred in connection with that recovery. Therefore,[3] the commission should have fixed the point at which the suspension of further benefits would terminate at the accrual of an additional $424,532.41 in compensation entitlements, at which point the employer's liability for payments would resume.

## C.  METHOD OF OFFSET

*Sheris* and *Bower* both concerned death awards. While in each case there was a possibility that the beneficiaries of those awards could become ineligible to receive them, those prospects were remote. Each award represented a fixed, readily calculable amount that was more than covered by the third-party recovery. There was no possibility of the workers' compensation liability exceeding the amount of the third-party recovery. By attributing to the employers in those cases total exoneration of their compensation liability, and by calculating and charging them their pro rata attorney's fees and costs at the outset, the courts laid to rest all the issues between those parties.

This case is economically different from *Sheris* and *Bower*. The benefits in this case extend during Ms. Bohle's disability, a condition that may be terminated by recovery or death. The employer's total liability is not subject to reliable calculation. Furthermore, the net proceeds in Ms. Bohle's hands are her property until the employer has a further right of indemnity, and then cease to be her property only to the extent that the employer is entitled to indemnity.

Under the method of indemnity ordered by the commission, even if the correct suspension cutoff point is fixed, the employer will receive dollar for dollar indemnity until the cutoff point is reached. During that time it will suffer no liability for pro rata attorney's fees and expenses. Only after the suspension is terminated and the employer resumes payment, will it begin to pay back to Ms. Bohle its pro rata share of the attorney's fees and expenses incurred by her in effecting the third-party recovery. It will not complete that reimbursement until the point at which $1,100,000 of benefits have been incurred and paid. Given the uncertain nature of Ms. Bohle's right to further compensation, the

---

[3] Assuming this method of offset was correct, a matter we address in the next section.

employer may thereby escape responsibility for its pro rata share of attorney's fees and costs.

In *Hunter v. Midwest Coast Transport, Inc.*, 400 Mass. 779, 511 N.E.2d 615 (1987), the Supreme Court of Massachusetts confronted this issue. Declaring that there were two ways allocation to the employer of its pro rata share of fees could be effected, it said:

One is to compute the insurer's offset by deducting the plaintiff's attorney's fees and costs from the statutory excess so that the offset equals the plaintiff's net recovery. Under that approach, the insurer here would not be required to make any payments until the plaintiff's future claims (claims after the third-party recovery) reach $1,846,420.79, if indeed they ever do. If and when that point is reached, the insurer will be obliged to pay further compensation claims in full. The other alternative is to require the insurer to pay a percentage of each claim as it is submitted equal to the ratio the total attorney's fee and costs bears to the total third-party recovery. In that way, the share of the attorney's fee and costs paid by the insurer is proportionate to the benefit it receives. The first approach clearly favors the insurer since, under that approach, the insurer has the use of the money for the attorney's fees and costs until the future compensation claims equal the third-party net recovery. Furthermore, if the plaintiff dies before that figure is reached, the insurer will entirely escape having to pay legal fees.

The defendants argue that the second approach is unfair to insurers, that it increases the probability of a double recovery to the employee or his estate, and that it creates a costly and unnecessary administrative burden for insurers. We recognize that the second approach may in some circumstances yield a result that is less than perfect, but we are persuaded that it is preferable to the first approach. Regardless of which approach we adopt, insurers will be required to keep records of the diminution of their offset as claims are submitted. The additional simple arithmetic required by the second approach does not impose an undue burden on insurers. Also, we perceive no possibility that an employee will receive a double recovery as a result of the second approach. What the

defendants characterize as a double recovery is nothing more than the employee's being relieved of the burden of attorney's fees for that part of a third-party recovery which ultimately redounds to the benefit of the insurer. Nor is there unfairness to an insurer in a system that reimburses the insurer for benefits paid before a third-party recovery has been effected, and credits it with an offset against subsequent claims, but requires it to pay the legal freight for the benefits it realizes. Under the first approach, that result will not be attained except when the entire statutory excess is exhausted. The over-all balance of equities is not shifted by the fact that the employee receives the third-party recovery "up front," while the benefit to the insurer from the third-party action accrues over time.

*Id.* at 784-85, 511 N.E.2d at 618-19.

The correct disposition of this case is for the employer to pay to the claimant twenty-five percent of each increment of further compensation entitlement as it accrues until such time as accrued post settlement benefits equal $585,454.66. At that time, a total of $1,100,000 in compensation benefits will have accrued and will have been realized by Ms. Bohle as follows:

| | |
|---|---:|
| Benefits Paid before Third-Party Settlement | $514,545.34 |
| Net Proceeds Received from Third-Party Settlement | 424,532.41 |
| Resumed Compensation | 160,922.25 |
| Total | $1,100,000.00 |

This result complies with the requirements of the statutes and with the rules set forth in *Sheris* and *Hunter*.

We recognize that the method of indemnity that we require here differs from that approved in *Bower*. However, we believe that the factual differences between this case and *Bower* make this method appropriate.

While not disagreeing with the foregoing analysis, the dissent contends that we should choose between the positions of the par-

ties. While this is a generally accepted standard of appellate review, we do not believe that allegiance to that standard requires us to adopt an erroneous rule, unfair to the parties and contrary to the expressed intention of the legislature.

We affirm the judgment of the commission denying a hearing and considering the case on the record and briefs. We reverse its judgment in the calculation and structure of the order suspending benefits. This case is remanded to it for the entry of an order in accord with the rule set forth in this opinion.

*Reversed and remanded.*

Moon, J., concurred.

Baker, J., dissenting.

It has been aptly stated that the appellate court is not an arena for the display of ingenuity and technical skill of counsel and the parties should not be permitted to take inconsistent positions at different stages of the proceedings. *See Kelley v. Commonwealth*, 140 Va. 522, 536, 125 S.E. 437, 441 (1924). Neither party would be permitted to take a position before us that would be inconsistent with the position taken below, and our holding in this case ought not be inconsistent with the pleadings before the commission and that presented by the parties in their briefs and arguments before us.

As frequently occurs in appellate consideration of issues presented on appeal, there is a temptation to declare what the court believes ought to be rather than limit the decision to the facts and pleadings as they were presented to the tribunal below. I fear here my learned brothers have yielded to that temptation. In my view, the majority has abandoned its role as a court of review and assumed that of lawmaker. I would leave that role to the members of the General Assembly.

When this matter was first considered by this panel, I wrote and submitted to the other panel members the following opinion that I believe should be the law of this case.

"Sharon J. Bohle (claimant) was severely injured in a job-related accident for which Henrico County School Board (employer) accepted workers' compensation liability. An appropriate

award was entered by the Industrial Commission (commission). Employing private attorneys, she instituted a third-party action against the parties who caused the accident and recovered the gross sum of $1,100,000. From that sum, she reimbursed employer and its insurance carrier[4] for all compensation payments[5] made to her or for her benefit to the date she received the third-party recovery. After reimbursing employer and paying her attorneys' twenty-five percent share of the total sum recovered and her share of costs expended relating to the third-party suit, claimant received the net sum of $424,532.41.

After the third-party recovery had been distributed to the interested parties, the commission entered an order suspending the claimant's award until she had expended a sum equal to three-quarters of the net proceeds she received, and proved that the expenditures were for matters cognizable as workers' compensation benefits.

Employer appealed the decision of the commission which reviewed and affirmed that order. Employer alleges that the commission erred because employer was not afforded an opportunity to present evidence and to be heard orally on the suspension order issue, and that to permit claimant to apply for resumption of compensation benefits after only three-quarters of the net proceeds are expended will result in a double recovery prohibited by the Workers' Compensation Act.

On January 8, 1990, employer requested that the full commission review the suspension order. Employer also requested that it be granted an opportunity to present oral argument in support of its opposition to the suspension order as entered. Employer's request incorporated by reference its December 29, 1989[6] letter to Deputy Commissioner Wilhoit. Neither letter requested permis-

---

[4] Henrico County School Board and its insurance carrier are jointly referred to herein as employer.

[5] The total of the payments made by employer was $514,545.34. The reimbursement it actually received was reduced by twenty-five percent, the amount of the attorneys' fees, and employer's proportionate share of the costs expended by claimant relating to the third-party action.

[6] This letter was in response to a December 8, 1989 letter claimant addressed to Deputy Commissioner Tarr in which claimant requested that a suspension order be entered which would permit her to apply for the reinstitution of benefits after expending three-quarters of the net proceeds from her third-party recovery.

sion to present additional evidence. Employer's December 29, 1989 letter specifically requested that an order be entered which would suspend its obligation to pay claimant any further benefits "until the net proceeds are expended for matters cognizable under the Workers' Compensation Act that are directly related to the claimant's injuries in this case."

In response to employer's December 29, 1989 letter, claimant by letter dated January 4, 1990, requested that the suspension order provide that the employer be required to resume the payment of workers' compensation benefits to claimant upon proof that she had paid "out $318,399.31 in medical compensation benefits (i.e., the $424,532.41 proceeds from the third-party settlement less the twenty-five percent attorney's fee)." Thus, at the time of claimant's January 4, 1990 letter the parties were in agreement that a suspension order should be entered, differing only as to whether suspension should continue until the entire net proceeds were expended, or whether claimant should have compensation benefits resumed after three-quarters of the net proceeds had been expended.

By letter dated January 30, 1990, the commission advised the parties that the claim would be reviewed before the full commission on the record only but offered each party the opportunity to file supporting briefs. On February 9, 1990, employer filed its brief setting forth the following as the facts which it asserted supported its request for an order suspending benefits.

The claimant was injured in a work-related accident on October 1, 1987. She received benefits under the Act for her injuries arising from the accident. She subsequently filed an action against other parties who were liable for her injuries. That matter was settled for $1,100,000. The workers' compensation lien at the time of the settlement was $514,545.34. The fee paid by the claimant to her attorney for procuring the third-party settlement was $275,000, or 25% of the gross recovery from the third parties. Costs and expenses incurred in procuring the third-party settlement totaled $4,911.24. Claimant's net recovery on the third-party claim was $424,532.41. This net cash recovery was net of the 25% attorney's fee and expenses, with the employer paying its pro rata portion of the fee and expenses.

Claimant agreed that employer's statement of facts was correct but asserted that she had paid her attorney a sum equal to twenty-five percent of $424,532.41, the net proceeds she received.

## I.

Employer first argues that the commission erred in denying it a hearing on the entry of an order suspending the payment of compensation benefits to claimant. I have examined the record and find that this issue was not raised either before the deputy commissioner or the full commission. The request for a suspension order was first made by counsel for claimant in a letter dated December 8, 1989, addressed to Deputy Commissioner Tarr with a copy to employer. Claimant's proposed order permitted her to apply for reinstitution of benefits after three-quarters of the net proceeds of the third-party recovery had been expended from those funds for matters cognizable as workers' compensation benefits. On December 20, 1989, claimant forwarded to the commission the third-party order of the Circuit Court of Henrico County, which approved the settlement. No response was made by employer until after the suspending order was routinely[7] entered on December 27, 1989; however, by letter dated December 29, 1989, addressed to Deputy Commissioner Wilhoit, counsel for employer asked that no order be entered as suggested by claimant. Instead, employer's letter suggested that an order be entered which would require the entire net proceeds be used for matters cognizable under the Workers' Compensation Act prior to imposing further liability on employer. No request for a hearing was made in that letter.

Claimant responded to employer's December 29, 1989 letter by citing *Sheris v. Travelers Insurance Co.*, 491 F.2d 603 (4th Cir.), *cert. denied*, 419 U.S. 831 (1974), and several commission opinions and orders in support of her position. Employer responded by requesting a full commission review of the December 27, 1989 suspension order, but it did not ask for an evidentiary hearing. Moreover, employer did not allege as error that it had not been granted a hearing prior to the entry of the suspension order. In its request for review, only a request for oral argument was made.

---

[7] The commission had entered similar orders in other cases. *See, e.g., Residential Electric Co., Inc., v. Aetna*, Claim No. 119-61-72; *Wheatley v. VEPCO*, Claim No. 125-79-65; *Dalton v. North Brothers*, Claim No. 110-59-59.

Employer's brief submitted to the commission in support of its application for review and reversal of the December 27, 1989 suspension order stated as follows:

The employer seeks review on the ground that the deduction of an additional 25% attorney's fee from claimant's net recovery constitutes a double recovery for the claimant and on the ground that it was not afforded an opportunity to present evidence and be heard on the issue.

I have reviewed the record in this case and would find that prior to filing its brief in support of its request for the full commission's review, employer never asked that it be afforded an opportunity to present evidence or be heard. In fact, the record establishes that employer requested that a suspension order be entered without further evidence or hearing. In its December 29, 1989 letter to Deputy Commissioner Wilhoit, employer suggested the following:

We suggest to the Commission that the Order should provide us with a suspension until the net proceeds are expended for matters cognizable under the Workers' Compensation Act that are directly related to the claimant's injuries in this case.

Employer's January 8, 1990 request for a review of the suspension order contains the following:

The employer hereby requests review of the Order of the Commission entered on December 27, 1989. Oral argument is requested. The employer further incorporates by reference herein the letter of its counsel to Deputy Commissioner Wilhoit dated December 29, 1989.

The employer's position before the commission was that the issue presented was one of law. While the commission's rules provide for oral argument it was not reversible error in this case for the commission to direct that the matter be submitted on briefs. The record supports employer's view that an order deciding the primary issue could be entered based on the agreed facts and, thus, the issue was one of law only. "Where a question of law is all that needs to be resolved it has often been held that the requirements of procedural due process are met where the party seeking review has the opportunity to state his views in writing." *James v.*

*Arlington County Bd. of Supervisors*, 226 Va. 284, 290, 307 S.E.2d 900, 903 (1983).

Such was the case in *Pan American Petroleum Corporation v. Federal Power Commission*, 322 F.2d 999 (D.C. Cir.), *cert. denied*, 375 U.S. 941 (1963), where the petitioner claimed that its due process rights were violated when the FPC resolved a question of law without a hearing. There, the D.C. Circuit said "[t]he requirements of procedural due process were satisfied by the opportunity to submit written evidence and written argument." 322 F.2d at 1005. To the same effect is *Mississippi River Fuel Corp. v. Federal Power Commission*, 281 F.2d 919 (D.C. Cir. 1960), *cert. denied*, 365 U.S. 827 (1961), where the petitioner claimed that it was denied due process because it did not receive an opportunity to make oral argument. The Court of Appeals rejected that argument, finding that under the circumstances there was "no need for an evidentiary hearing." 281 F.2d at 927. The appeals court said the only question raised was one of law and that the petitioner's "interpretation was plainly stated in its letter to the Commission, and later in briefs submitted on its petition for rehearing." *Id.* Thus, in the view of the Court of Appeals:

> The issue was clearly and fully stated and no questions of fact were presented. In essence, all petitioner lost was the privilege of making an oral argument to the Commission. This does not amount to a deprivation of due process. . . .

281 F.2d at 927. The same reasoning applies here. All James lost was the chance to restate that which was already adequately stated in his letter and other written communications to the Commission.

*Id.* I would hold that the same reasoning is applicable in the case before us and that employer has not been denied due process.

## II.

Employer next argues that entry of the December 27, 1989 suspension order allows claimant a double recovery, contrary to the provisions of the Workers' Compensation Act. Claimant argues

that she will not receive double recovery; rather, she contends that pursuant to Code § 65.1-43, the commission's order represents merely an assessment of a fee on a pro rata basis according to benefits received by the employer as a result of the third-party recovery. Code § 65.1-43 provides:

In any such action, or claim for damages, by such employee, his personal representative or other person against any person other than the employer, and in any such action brought, or claim asserted, by the employer under his right of subrogation provided for in § 65.1-41, if a recovery is effected, either by judgment or voluntary settlement, the reasonable expenses and reasonable attorney's fees of such claimants shall be apportioned pro rata between the employer and the employee, his personal representative or other person, *as their respective interests may appear* (emphasis added).

In rendering its interpretation of that statute, in its review opinion, the commission said:

The Virginia Legislature recognized in 1960 that it was unfair for the claimant to be saddled with the entire attorney's fee incurred on a third-party recovery and provided for an apportionment of the fee on a pro-rata basis between the employer and the employee "*as their respective interests may appear.*" The Legislature did not see fit to limit the pro rata interest on the basis of the interest of the parties at the time of the settlement, and for this reason, we find it was intended for the employer to pay a pro rata portion of the attorney's fee based on its entire exposure under the Workers' Compensation Award (emphasis added).

In concluding that the award entered by the deputy was correct, the commission further said:

It must be recognized the interest of the employer in the third-party settlement increases each time the employee makes a medical payment or each time another compensation payment becomes due as these are payments the employer would be making except for the third-party settlement.

As applied to the facts and pleadings of this case, I would agree with the commission's conclusion. Prior to 1960, Virginia statutes did not mandate that the employer share in the cost of claimant's recovery against a third party but did require that from that recovery the employee must reimburse the employer for any sums paid to or on behalf of the employee so as not to allow a claimant to enjoy a double recovery for the same injury. Recognizing that the employer should be required to pay its proportionate share of the fees and costs incurred in third-party recoveries which enure to the employer's benefit, Code § 65.1-43 was enacted. Key words in the application of the statute to this case are "subrogation," "reasonable expenses," "reasonable attorney's fees," "apportioned pro rata," and "as their respective interests may appear." In interpreting those phrases contained in Code § 65.1-43, Judge Butzner in *Sheris* concluded that the entire compensation award furnished the appropriate basis for apportionment and said:

> The Supreme Court of Virginia has not been called upon to decide the correct basis for apportioning an attorney's fee when the employee's recovery against the wrongdoer is in excess of both the paid and unpaid portions of a compensation award. Several courts, however, have interpreted apportionment statutes similar, though not identical, to Virginia's. They have ruled that apportionment must be based on the full liability of the employer — the compensation it has paid in the past and the amount that it would be required to pay in the future were it not for the employee's successful suit.

> The reasoning of these cases is sound. It rests on the conclusion that there is no rational distinction between the benefit an employer enjoys from being reimbursed for compensation payments already made and the benefit of being released from the obligation to make future compensation payments. Therefore, as one court has pointed out, it is reasonable to assume that the legislature intended the attorney's fee to be prorated to the extent of the benefits the employer received from the recovery against the wrongdoer. Stated negatively, there is nothing to indicate that when the Virginia legislature directed proration of the fees as the interests of the parties may appear, it intended that only part of the interest of the compensation carrier should be taken into account.

491 F.2d at 606 (footnotes omitted).

I agree with Judge Butzner's observation in *Sheris* that no rational distinction can be made between the benefit an employer enjoys from being reimbursed for compensation payments already made and the benefit the employer receives from being released from an obligation to make payments in the future to the employee. I perceive no difference in a death claim and that made here. To the extent that employer is relieved from paying any compensation benefits until the net proceeds have been expended by claimant, the rationale is the same. The net proceeds received by claimant constitute a definite sum, the extent of the employer's relief is ascertainable since before compensation benefits can be reinstituted, claimant must prove that her expenditures were for matters associated with her job-related injury, and a process is available before the commission to settle any disagreement between the parties concerning those expenditures.

No Virginia appellate court[8] has addressed this specific issue; however, other jurisdictions have rejected employer's double recovery argument. While the statutes involved in the cases vary, the principle set forth in each statute has been held to disclose a legislative intent that the employer should contribute fees in proportion to the benefits it receives from the third-party recovery.

In *Hunter v. Midwest Coast Transport, Inc.*, 400 Mass. 779, 511 N.E.2d 615 (1987), the Supreme Court of Massachusetts was required to respond to the following issue:

> [D]oes Massachusetts law require that the attorney's fees and costs paid by an employee, as well as the amount of compensation already paid by the insurer, be deducted from the total recovery for the purpose of calculating the amount of the "excess" to be used as an offset against future compensation payments by the insurer?

*Id.* at 779-80, 511 N.E.2d at 616. The Massachusetts Supreme Court responded in the affirmative.

In *Hunter*, the Massachusetts Supreme Court was required only to decide the limited question certified by a United States District

---

[8] Subsequent to preparing this opinion, the Supreme Court of Virginia has decided *Circuit City Stores, Inc. v. Bower*, 243 Va. 183, 413 S.E.2d 55 (1992).

Court before which the apportionment of fees from a third-party recovery was an issue. The Massachusetts Supreme Court, after responding in the affirmative to the limited question certified to it, further declared that there were two ways in which the contribution to the fees could be made by the employer. The Court said:

> One is to compute the insurer's offset by deducting the plaintiff's attorney's fees and costs from the statutory excess so that the offset equals the plaintiff's net recovery. Under that approach, the insurer here would not be required to make any payments until the plaintiff's future claims (claims after the third-party recovery) reach $1,846,420.79, if indeed they ever do. If and when that point is reached, the insurer will be obliged to pay further compensation claims in full. The other alternative is to require the insurer to pay a percentage of each claim as it is submitted equal to the ratio the total attorney's fee and costs bears to the total third-party recovery. In that way, the share of the attorney's fee and costs paid by the insurer is proportionate to the benefit it receives. The first approach clearly favors the insurer since, under that approach, the insurer has the use of the money for the attorney's fees and costs until the future compensation claims equal the third-party net recovery. Furthermore, if the plaintiff dies before that figure is reached, the insurer will entirely escape having to pay legal fees.

The defendants argue that the second approach is unfair to insurers, that it increases the probability of a double recovery to the employee or his estate, and that it creates a costly and unnecessary administrative burden for insurers. We recognize that the second approach may in some circumstances yield a result that is less than perfect, but we are persuaded that it is preferable to the first approach. Regardless of which approach we adopt, insurers will be required to keep records of the diminution of their offset as claims are submitted. The additional simple arithmetic required by the second approach does not impose an undue burden on insurers. Also, we perceive no possibility that an employee will receive a double recovery as a result of the second approach. What the defendants characterize as a double recovery is nothing more than the employee's being relieved of the burden of attorney's fees for that part of a third-party recovery which ulti-

mately redounds to the benefit of the insurer. Nor is there unfairness to an insurer in a system that reimburses the insurer for benefits paid before a third-party recovery has been effected, and credits it with an offset against subsequent claims, but requires it to pay the legal freight for the benefits it realizes. Under the first approach, that result will not be attained except when the entire statutory excess is exhausted. The over-all balance of equities is not shifted by the fact that the employee receives the third-party recovery "up front," while the benefit to the insurer from the third-party action accrues over time.

*Id.* at 784-85, 511 N.E.2d at 618-19.

While I do not necessarily disagree with the Massachusetts decision as to how the contributions to fees for enured benefits should be paid, we should not apply it here. Claimant asked only that a suspension order be entered which would require the employer to pay any compensation after claimant had expended three-quarters of the net proceeds she had received. Conversely, employer only requested that the commission enter a suspension order exempting it from making any payment until the entire net proceeds had been expended. No other issues were before the commission, and we should decide only what is appropriate between those two requests.

The key words in Code § 65.1-43 are contained in workers' compensation statutes of states other than Virginia. While statutes construed in cases vary, the constructions by the courts disclose legislative intent that the employer must contribute to the fees and expenses in proportion to the benefits, past or future, the employer receives as a result of the third-party recovery.

The decisions of other federal and state courts are consistent with the *Sheris* decision. In Utah, the workers' compensation statute requires in relevant part that the employer must bear reasonable expenses and attorney's fees related to a third-party recovery and that they "shall be paid and charged proportionately against the parties *as their interest may appear*" (emphasis added). The Utah Supreme Court held that the language imposed liability on the employer to pay fees based not only on compensation already paid, but also on sums for which in the future it would be relieved of paying because of the third-party recovery. *See Prettyman v.*

*Utah State Dep't of Finance*, 27 Utah 2d 333, 496 P.2d 89 (1972).

In Nebraska, the workers' compensation statute, *Neb. Rev. Stat* § 48-118 (1943), in relevant part provides for deduction of reasonable attorney's fees and expenses incurred in a third-party recovery, and requires that the "expenses and attorney's fees shall be apportioned by the court between the parties *as their interests appear* at the time of such recovery." (emphasis added). In *Gillotte v. Omaha Public Power District*, 189 Neb. 444, 203 N.W.2d 163 (1973), the Nebraska Supreme Court considered whether that statute required the employer to contribute to fees and expenses related to a third-party recovery which reimbursed the employer for sums already paid and, in addition, relieved it of future workers' compensation obligations. The Court held:

> Under section 48-118, R.R.S.1943, the *subrogated interest* of the employer, for computation and allocation of fees and expenses, is not restricted to the workmen's compensation benefits actually paid, but is measured by the workmen's compensation liability relieved or discharged by the recovery against the third party.

*Id.* at 452-53, 203 N.W.2d at 168 (emphasis added); *see also Nekuda v. WASPI Trucking, Inc.*, 222 Neb. 806, 388 N.W.2d 438 (1986) (in which the *Gillotte* opinion was modified).

In relevant part, the Pennsylvania workers' compensation statute provides:

> Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer *shall be subrogated* to the right of the employee, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be pro-rated between the employer and employee, his personal representative, his estate or his dependents. . . . (emphasis added).

*See Soliday v. Hires Turner Glass Co.*, 187 Pa. Super. 44, 142 A.2d 425 (1958). In *Soliday*, the employer asserted that it was

liable for fees and expenses only on the sums it had paid as of the date of the third-party recovery. The Pennsylvania Superior Court rejected that argument and concluded that the employer was required to share the burden of fees and expenses "on the basis of [the insurance carrier's] total benefit from the third-party recovery, that is, the total amount which the carrier would have been called upon to pay." *Id.* at 51, 142 A.2d at 428. The Court said:

> We conclude, therefore, that the employer or its insurance carrier must pay a proportionate attorney's fee on the full amount which it was obligated to pay under the Workmen's Compensation Act, whether paid out or not at the time of the third-party settlement, and not only on the amount which it had actually paid. We hold that the board and the court below should be affirmed and that the carrier be required to contribute to the legal fees which represent the successful efforts that resulted in relief to the carrier from paying any further compensation on its existing or future liability.

*Id.*

In *Takahashi v. Loomis Armored Car Service*, 625 F.2d 314 (9th Cir. 1980), the Hawaii Workers' Compensation statute permitted the deduction of attorney's fees and expenses from a third-party recovery based on the "services rendered by the employee's attorney in effecting recovery *both for the benefit of the employee and the employer.*" (emphasis added). The Court held:

> Although Hawaii has no case law interpreting the phrase "benefit of . . . the employer" in HRS § 386-8, courts in several states having similar statutes have construed the term to include the benefit to the employer, or its insurance carrier, in being relieved from liability for future expenditures. For example, the Supreme Court of New Jersey has stated that:
>
>> [T]he assessment against the employer for its pro rata share of the attorney's fee in the third party tort recovery [is] . . . measured by "his total compensation liability under the act, however much the obligation may remain unfulfilled at the time of the third party recovery, rather than the compensation payments then actually made to the work[er]."

*Teller v. Major Sales, Inc.*, 64 N.J. 143, \_\_\_\_, 313 A.2d 205, 207 (1974)(quoting *Dante v. Gotelli*, 17 N.J. 254, \_\_\_\_, 111 A.2d 267, 268 (1955)). *Accord, Schalk v. Michigan Sewer Construction Co.*, 62 Mich. App. 658, 233 N.W.2d 825, 827 (1975).

*Id.* at 316. *See also Dowhy v. Harvey B. Moyer, Inc.*, 278 F.2d 753, 754-55 (3d Cir. 1960)(holding "the employee is entitled to a pro rata counsel fee measured by the amount of the employer's liability to him for compensation whether the compensation has been paid or not").

In *Security Insurance Co. v. Norris*, 439 S.W.2d 68 (1969), the Kentucky Court of Appeals considered the same issue raised in the cases previously cited; however, Kentucky statutes provided no guidance. The Court of Appeals noted that prior Kentucky "decisions imposing a liability [on the employer] have based the liability on principles of equity, fairness and justice, such as are invoked in cases of unjust enrichment." *Id.* at 70. The Court then held:

> Those principles apply with equal force whether the recovery relieves the compensation carrier of *all* future payments or only of part of them. In either case the carrier should bear the costs of the recovery to the extent it redounds to his benefit.
>
> \* \* \* \*
>
> It is our opinion that the carrier in the instant case properly was held liable for the attorneys' fees on such amount of recovery by the administrator against K.U. as equaled the amount of future compensation payments of which the carrier was relieved (this liability being in addition to the carrier's admitted liability for fees on the amount of $4,240 recovered directly for the carrier).

*Id.* at 70. *See also Wall v. Conn Welding & Mach. Co.*, 197 Pa. Super. 360, 367, 179 A.2d 235, 238 (1962). I concur with the decisions of these cases.

In summary, under the facts of this case, I would find that the commission's refusal to permit oral argument was not a violation

of employer's due process rights and, for the reasons stated, the suspension order is *not in violation of* the provisions of the Virginia Workers' Compensation Act."

I express no opinion whether, if properly pleaded, the result should be as opined by the majority; however, as noted in the opinion of the majority and dissent, the commission on several prior occasions has entered orders the same as entered in this case.

[T]he construction accorded a statute by the public officials charged with its administration and enforcement is entitled to be given weight by the court. The legislature is presumed to be cognizant of such construction. When it has long continued without change, the legislature will be presumed to have acquiesced therein.

*Baskerville v. Saunders Oil Co.*, 1 Va. App. 188, 193, 336 S.E.2d 512, 514 (1985).

The majority finds no support in the case law except in *Hunter*, which is discussed above. The majority fails to relate the precise issue certified to the Massachusetts Court by the federal court. Nor does the majority note that the state court was not reviewing a decision of a lower tribunal to determine whether there was error based on the pleadings and issue as submitted on appeal. In its opinion, the majority accurately discloses the difference between the issue certified by the federal court to the Massachusetts Court, and that before the Workers' Compensation Commission and this Court. The Massachusetts Court was not constrained by prior decisions of its Workers' Compensation Commission, which at least had received the tacit approval by its legislature. Nor was that Court called upon to determine whether a specific issue had been erroneously decided by the commission. The case before us is distinguishable.

As noted above, subsequent to the oral argument in the case before us, the Supreme Court of Virginia in *Bower* cited with approval *Sheris*, followed by the commission and noted in this dissent. In *Bower*, the Court said:

Code § 65.1-43 directs the trial court to consider the respective interests of the parties in the settlement. The employer's interests include its present obligation to make future pay-

ments. The likelihood that the compensation award will be modified is but one factor to be weighed by the trial court in determining the proper amount of attorney's fees to be assessed against the employer. *Although examination of this factor cannot yield a quantifiable result, we believe that consideration of the entire 500-week award is nonetheless necessary to reach an equitable outcome in the apportionment of attorney's fees. If this were not done, the employer would be relieved of a substantial obligation as a result of Bower's efforts without being required to compensate her therefor.*

*We also hold that the language of Code § 65.1-42 does not compel a different result.*

*Bower*, 243 Va. at 187-88, 413 S.E.2d at 57 (emphasis added).

Here, as in *Bower*, an examination of future possibilities discloses that quantifiable results could not be accurately determined at the time the issue was before the commission. In the case before us, claimant asked for suspension of compensation benefits until three-quarters of the surplus from the third-party settlement had been expended. The employer argued that any further fee allowance would be "double recovery" and asked that the suspension be continued until all the surplus had been expended. No other issue was before the commission. On the narrow issue before the commission and this Court, all the authorities support the finding of the commission.

In its opinion, the majority infers that I do not disagree with its "analysis." I neither agree nor disagree. I continue to believe that my opinion should have been adopted as the rule of this case. I further believe that the rule pronounced by the majority opinion should either be addressed by the legislature or saved for the day it is presented for our decision upon proper briefs and argument based on appropriate facts and pleadings presented below. Therefore, I respectfully dissent and would affirm the decision of the commission.