## Sharon J. Bohle, by and through her Guardian, R. Shawn Majette

### v.

## Henrico County School Board

Record No. 921256

June 11, 1993

Present: Carrico, C.J., Compton, Stephenson, Whiting, and Hassell, JJ., and Poff, Senior Justice, and Cochran, Retired Justice

George E. Allen, III (Allen, Allen, Allen & Allen, on briefs), for appellant.

Chàrles F. Midkiff (Steven H. Theisen; Midkiff & Hiner, on brief), for appellee.

JUSTICE COMPTON delivered the opinion of the Court.

In this workers' compensation case, we consider the method to be used for apportioning attorney's fees and expenses when payment of compensation benefits has been suspended following a settlement between the employee and the third-party tortfeasor.

On October 1, 1987, the employee, Sharon J. Bohle, age 37, was severely injured in a three-vehicle accident in Henrico County. The accident arose out of and was in the course of her employment with the Henrico County School Board, which was self-insured.

On December 17, 1987, the Industrial Commission (now the Workers' Compensation Commission) entered an award based on a Memorandum of Agreement for payment of weekly compensation, during incapacity, beginning October 8, 1987. Medical benefits were awarded "for as long as necessary."

On December 6, 1989, the Circuit Court of Henrico County, pursuant to Code § 8.01-424, approved a settlement between the guardian of the incapacitated employee and third-party tortfeasors in the amount of $1.1 million. The circuit court ordered attorney's fees of $275,000, or 25 percent of the gross settlement, plus litigation expenses of $4,911.24 paid from the settlement proceeds. In satisfaction of an existing workers' compensation lien of $514,545.34, the court also ordered payment to the employer and its reinsurer of the sum of $383,600.72; this represented the amount of the lien less a pro rata share of the attorney's fee and expenses, pursuant to former Code § 65.1-43 (now § 65.2-311). After allowing payment of $11,955.63 to the employee's husband to reimburse him for sums expended for child care during the employee's incapacity, the court ordered the net balance of the settlement of $424,532.41 paid to the employee's guardian for her ongoing care and maintenance.

On December 27, 1989, the Commission entered an order suspending payments under its December 17, 1987 award. The basis of the suspension was that the employee had received a substantial sum through a third-party settlement.

In the order, the Commission recited the amount of the compensation lien, the amount received by the employer to satisfy the lien, and the net amount of the settlement received by the employee. The order further recited, "if and when this net is used toward compensation benefit and/or medical, 25% thereof in legal fees shall be deducted therefrom." Concluding, the order stated: "THEREFORE, no further compensation or medical expenses will be due the

employee subsequent to December 5, 1989, until the employee can show that further benefits exceed *$318,399.31*." (Emphasis added.)

The employer sought review of the suspension order before the full Commission. The parties agreed there should be a suspension of payments under the compensation award but disagreed about the interpretation of Code § 65.1-43 with respect to the apportionment of attorney's fees and costs incurred by the employee in the prosecution of her third-party claim.

As pertinent, Code § 65.1-43 provided: "In any . . . action, or claim for damages, by [an] employee, . . . against any person other than the employer, . . . if a recovery is effected, . . . the reasonable expenses and reasonable attorney's fees of such claimants shall be apportioned pro rata between the employer and the employee, . . . as their respective interests may appear."

Before the full Commission, the employer contended that the apportionment of attorney's fees with respect to the third-party settlement should be based on the interest of the parties as reflected at the time of the settlement. The employer argued that the employee should receive no further credit or reimbursement for the attorney's fees and litigation expenses on the net recovery even though the net recovery relieved the employer of some future compensation obligations. Thus, the employer argued, compensation should not resume until the employee had established that her further medical treatment and entitlement to compensation for disability exceeds the net amount of $424,532.41 that she received from the third-party settlement, not merely the amount of $318,399.31, as recited in the suspension order. The employer contended that the Commission had allowed the employee a double recovery of $106,133.10, the difference between $424,532.41 and $318,399.31.

On April 23, 1990, the full Commission affirmed the suspension order. Relying on *Sheris* v. *Travelers Insurance Co.*, 491 F.2d 603 (4th Cir. 1974), the Commission decided that the General Assembly in Code § 65.1-43 recognized the unfairness of having an employee "saddled with the entire attorney's fee incurred on a third-party recovery and provided for an apportionment of the fee on a pro-rata basis between the employer and the employee 'as their respective interests may appear.' " The Commission stated that the legislature "did not see fit to limit the pro rata interest on the basis of the interest of the parties at the time of the settlement." For this reason, the Commission found that the legislature intended for the employer to pay a pro rata portion of the attorney's fee based on its "entire

exposure'' under the compensation award. Agreeing with the employer that the employee's attorney is not entitled to an additional fee, apparently a reference to the ''double recovery'' argument, the Commission nevertheless refused to modify the suspension order, stating ''the apportionment provided in the Order works for the benefit of the employee.''

In January 1992, this Court decided *Circuit City Stores, Inc.* v. *Bower*, 243 Va. 183, 413 S.E.2d 55 (1992). In upholding a trial court's apportionment of attorney's fees and expenses under Code § 65.1-43 with respect to a death claim, the Court adopted the *Sheris* reasoning. The Court decided that the statute gives a trial court the discretion to determine that the apportionment of attorney's fees should be based on the employer's exoneration from its full potential liability because no rational distinction can be made between the benefit an employer enjoys from being reimbursed for compensation payments already made and the benefit of being released from the obligation to make further compensation payments. *Id.* at 186-87, 413 S.E.2d at 56-57.

In the present case, the employer appealed the full Commission's decision to the Court of Appeals. In July 1992, a divided three-judge panel of that court reversed. *Henrico County Sch. Bd.* v. *Bohle*, 14 Va. App. 801, 421 S.E.2d 8 (1992). Guided by *Bower*, the Court of Appeals stated that an employer ''is entitled to be indemnified out of the third-party recovery to the extent that it has made or will make payments of compensation to or for the'' employee. *Id.* at 806, 421 S.E.2d at 11. The court agreed with the employer and held that ''the commission denied to it its full indemnity entitlement and effected a double recovery to'' the employee. *Id.* at 804, 421 S.E.2d at 10.

Additionally, noting that its ''method of indemnity'' is different from that approved in *Bower* and relying on *Hunter* v. *Midwest Coast Transport, Inc.*, 511 N.E.2d 615 (Mass. 1987), the Court of Appeals held: ''The correct disposition of this case is for the employer to pay to the claimant twenty-five percent of each increment of further compensation entitlement as it accrues until such time as accrued post settlement benefits equal *$585,454.66*.'' 14 Va. App. at 810, 421 S.E.2d at 14. (Emphasis added.) That sum is the difference between the gross settlement of $1.1 million and the compensation lien of $514,545.34.

Accordingly, the Court of Appeals reversed the Commission's ''judgment in the calculation and structure of the order suspending

benefits'' and remanded the case to the Commission for entry of an appropriate order. *Id.* at 811, 421 S.E.2d at 14. We awarded the employee an appeal, determining that the decision of the Court of Appeals involves matters of significant precedential value. Code § 17-116.07(B).

In this appeal, the employee contends that the ''Court of Appeals erred in holding that Employee's third party tort recovery required the suspension of her compensation award until such time as further compensation entitlement in the amount of $585,454.66 accrued, and thus failed to properly apportion the legal fees and expenses of the third party recovery.''

Assigning cross-error, the employer contends that the Court of Appeals erred ''in adopting a new method of offset for apportioning attorney's fees and expenses where the future liability of the employer is indeterminate and speculative.''

While we do not entirely agree with either party, we do conclude that the Court of Appeals erred. We are of opinion that the Commission's suspension order of December 27, 1989 should be reinstated.

■ When interpreting Code § 65.1-43, or any other statute, we follow the settled rule that the construction accorded a statute by public officials charged with its administration is entitled to be given weight by the courts. *Peyton* v. *Williams*, 206 Va. 595, 600, 145 S.E.2d 147, 151 (1965). Indeed, the Court of Appeals has said that the Commission's construction of the Workers' Compensation Act should be given ''great'' weight. *Graham* v. *Peoples Life Ins. Co.*, 7 Va. App. 61, 68, 372 S.E.2d 161, 165 (1988).

■ As we understand the Commission's approach, once the employee's net third-party recovery is determined, the employee will be entitled to payment of no further compensation or medical expenses subsequent to the date fixed in the suspension order until the employee can establish that further benefit entitlements exceed the net amount received by the employee from the third-party recovery. As we read the suspension order in this case (''if and when this net is used toward compensation benefit''), the Commission has not foreclosed the payment of attorney's fees in increments as medical expenses and compensation benefits accrue during the suspension period. The Commission's method foreshadowed and is consistent with *Bower*, and does not eliminate use of the *Hunter* approach, adopted by the Court of Appeals.

■ Criticizing incremental administration of the payment of attorney's fees as ''pay-as-you-go'' and ''litigate-as-you-go,'' the

employer contends that if compensation entitlement must be determined periodically, rather than at the end of the period when full entitlement is achieved, an administrative nightmare will result from this piecemeal determination of accrued benefits.

The Commission has already spoken to this alleged administrative problem, and rejected the idea that it would occur. In *Dalton* v. *North Brothers*, 68 O.I.C. 239 (1989), the Commission said, in a § 65.1-43 case: "The employer and its carrier foresee continuous and burdensome monitoring and computation of medical bills, prescriptions and compensation prospects with ensuing disputes and hearings. The Commission does not foresee the same problems." *Id.* at 240-41.

Therefore, although we will reinstate the entire suspension order, we will set forth the operative provisions:

"The employee received a net amount of $424,532.41; if and when this net is used toward compensation benefit and/or medical, 25% thereof in legal fees shall be deducted therefrom.

"THEREFORE, no further compensation or medical expenses will be due the employee subsequent to December 5, 1989, until the employee can show that further benefits exceed $318,399.31."

■ And, we also disagree with the employer and the Court of Appeals that the suspension order allows the employee a double recovery of $106,133.10, requiring the final figure in the order to be $424,532.41 instead of $318,399.31. After the employer is reimbursed the money paid as compensation benefits to the date of the suspension, the employer is excused from making payments in the future during the suspension period to the extent the employee would otherwise be entitled to continued medical or compensation benefits. As the Commission pointed out in the review opinion: "It must be recognized the interest of the employer in the third-party settlement increases each time the employee makes a medical payment or each time another compensation payment becomes due as these are payments the employer would be making except for the third-party settlement." Thus, the employee should be reimbursed for her expenses in connection with the third-party recovery in proportion to the benefit the employer receives.

■ Finally, we reject the employer's present contention that the employee's net recovery was $436,488.04 instead of $424,532.41, the figure used by the circuit court and the Commission. The employer says the higher amount "was net of $11,955.63" paid to the employee's husband for child care, an expense, the employer now argues, not chargeable to an employer or a workers' compensation carrier. But throughout the proceedings before the circuit court and the Commission, the employer consistently took the position that the employee's net recovery was $424,532.41, and maintained that compensation should resume when the employee had expended that amount in compensable benefits. The employer will not be allowed to change its position and contend that the net recovery actually was a different amount.

Therefore, the judgment of the Court of Appeals will be reversed and final judgment will be entered here reinstating the Commission's December 27, 1989 suspension order.

*Reversed and final judgment.*

JUSTICE WHITING, dissenting in part.

I agree with the majority opinion except for its determination of *when* Bohle's future benefit entitlements "will exceed the net amount received by [Bohle] from the third party." Contrary to the majority's assertion, I believe that reinstating the Commission's order will result in a substantial windfall to Bohle.

If Bohle continues to be entitled to compensation and payment of medical expenses and those sums exceed the gross sum of $585,455 (Bohle's share of the gross settlement), the employer Board should receive a credit of $820,089 from Bohle. This sum represents 74.55% of the gross settlement of $1.1 million, or $279,911 less than the total settlement. The total amount of attorney's fees and litigation costs incurred in obtaining the settlement was $279,911. However, since the employer has thus far received $383,601, and will receive only an additional $318,399 under the majority's ruling, the employer's credit from Bohle will be only $702,000, a shortfall of $106,133 after Bohle's child care payment has been deducted.

The following is a computation of the distribution of the settlement rounded off to the nearest dollar. I agree that the employer waived its objection to the distribution of $11,956 for child care. Recognizing that this amount must be added to the trial court's

computation of Bohle's net settlement, and cannot be charged as a part thereof, I treat Bohle's net recovery as $436,488 ($11,956 plus the net settlement as stated in the trial court, $424,532) in the following computation:

| | | | |
|---|---|---|---|
| Gross Settlement | | | $1,100,000 |
| Employer's gross reimbursement for amounts paid for Bohle's benefit | | $514,545 | |
| Employer's proportionate cost of collection | $130,944 | | |
| Employer's net collection | $383,601 | | |
| Bohle's share of the settlement | | $585,455 | |
| Bohle's proportionate cost of collection | $148,967 | | |
| Bohle's net recovery | $436,488 | | |
| Totals | $1,100,000 | $1,100,000 | $1,100,000 |

One objective in distributing a settlement from a third party tort-feasor between an injured worker and the employer is to fairly allocate the costs of collecting the settlement between the worker and the employer, prorated between them on the gross recoveries each receives from the settlement. However, in deciding when the employer resumes liability for payment of further compensation and medical expenses to Bohle, the majority makes what I think is a mathematical error.

The majority states correctly that

> once the employee's net third-party recovery is determined, the employee will be entitled to payment of no further compensation or medical expenses subsequent to the date fixed in the suspension order *until* the employee can establish that further benefit entitlements *exceed the net amount received by the employee* from the third party recovery.

(Emphasis added.)

As the burden of the financial responsibility for Bohle's continued disability shifts between Bohle and her employer, the majority recognizes that the employer should bear the costs of collecting the gross amounts Bohle received in settlement; in effect, the burden of the costs of collection shifts between the two of them because Bohle assumed what would have been the employer's burden of paying had it not been for the settlement. However, in deciding the amount of Bohle's net recovery, the majority, following the Commission, has made the error of *netting* Bohle's *net* recovery again, thereby reducing Bohle's net recovery from $424,532 to $318,399. The difference between Bohle's net recovery of $424,532 and her net-net recovery of $318,399 is $106,133. This amount is 25% of $424,532, Bohle's net recovery. Thus, the majority has in effect credited Bohle *twice* for her share of the amount paid for attorney's fees.

This additional credit will result in a $106,133 windfall to Bohle, assuming that she continues to be disabled, because the employer will be required to resume payment of compensation and medical expenses *before* Bohle discharges her burden of assuming those payments from her net recovery. This windfall is shown in the following computation:

| | | | |
|---|---|---|---|
| Gross settlement | | | $1,100,000 |
| Employer's cost of collection | | $279,911 | |
| Employer's net recovery* | | $702,000 | |
| Child care | | $11,956 | |
| Bohle's windfall | | $106,133 | |
| Bohle's net recovery | $424,532 | | |
| Less: Bohle's net net recovery | $318,399 | | |
| Totals | $106,133 | $1,100,000 | $1,100,000 |

* This amount is the sum of the amount already paid to the employer, $383,601, and the maximum amount it will collect from Bohle's net settlement under the Commission's order, $318,399.

Had the employer expended exactly $1.1 million on Bohle's behalf at the date of the settlement, it unquestionably would have been entitled to Bohle's entire net recovery of $820,089 at that time. The end result should be no different simply because those funds will be expended in the future.

Using the "pay-as-you-go" approach adopted by the Court of Appeals, the employer Board should continue to pay its pro rata share of expenses until Bohle's *whole* net recovery is exhausted. The employer would then begin making payments in full again.

Accordingly, I would hold that Bohle will not be entitled to payment of further compensation and medical expenses until she has expended the sum of $424,532.41 by assuming the burden of approximately 75% of those amounts the employer would have paid on her behalf, had there been no settlement, with the employer paying the other 25% of those amounts.