# JUNE A. DADE

### v.

# JOHN W. ANDERSON, ADMINISTRATOR, ETC., ET AL.

Record No. 930025

January 7, 1994

Present: All the Justices

**4**

*Barry A. Norwood* for appellant.
*David E. Constine, III (Mays & Valentine,* on brief), for appellees.

CHIEF JUSTICE CARRICO delivered the opinion of the Court.

In *Alexander v. Kuykendall,* 192 Va. 8, 63 S.E.2d 746 (1951), this Court held that one spouse may not recover in implied contract for services rendered to the other.[1] We are asked in the present case to overrule *Alexander* and allow the plaintiff, June A. Dade, to recover from the estate of her deceased husband, Thomas Gwendol Dade, for services she rendered to him during a period of illness. We decline the request and affirm the dismissal of the plaintiff's claim.

The plaintiff asserted her claim in a motion for declaratory judgment filed on June 16, 1992, against John W. Anderson, the administrator of her husband's estate. On July 1, 1992, Zina M. Rambo, Gwendolyn E. Barnes, and Thomasine C. Dade, children of Thomas Dade by a previous marriage, filed a petition to intervene as defendants in the declaratory judgment proceeding.

The children alleged in their petition that Thomas Dade had died intestate on April 22, 1991, and that they were entitled to two-thirds of his estate and, hence, were necessary parties to the proceeding. The petition was granted without objection, and the children (hereinafter,

---

[1] In *Alexander,* the plaintiff was induced by false representations to marry the defendant, and she lived with him until she discovered the fraud. She then filed an action for damages sounding in both implied contract and fraud and deceit. The trial court sustained the defendant's demurrer and dismissed the plaintiff's action. This Court ruled that while the plaintiff could not recover in implied contract for the reasonable value of the services she had rendered to the defendant during the time she believed they were married, 192 Va. at 10-11, 63 S.E.2d at 747, she could recover in fraud and deceit for the damages she had suffered, *id.* at 14, 63 S.E.2d at 749.

the defendants) demurred to the plaintiff's motion for declaratory judgment.

The plaintiff was granted leave to file an amended motion for declaratory judgment, and the defendants' demurrer was treated as having been addressed to the amended motion. After argument, the trial court sustained the demurrer and dismissed the amended motion.

Because the amended motion was dismissed on demurrer, we take as true those facts which are " 'expressly alleged, those which fairly can be viewed as impliedly alleged, and those which may be fairly and justly inferred from the facts alleged.' " *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277, 279 (1993) (quoting *Rosillo v. Winters*, 235 Va. 268, 270, 367 S.E.2d 717, 717 (1988)).

According to the allegations of the amended motion for judgment, Thomas Dade was rendered encephalopathic on March 25, 1989, as a result of anoxic brain damage suffered while in the care of Richmond Memorial Hospital. Between the date of Dade's injury and November 4, 1990, with the exception of those days during which he was a hospital inpatient, the plaintiff provided Dade with "healthcare services necessary for his benefit, welfare, and comfort." These services "were not such as would be required to be provided by an incapacitated person's spouse as a result of the marital relationship *per se*" and were "in lieu of provision of same by healthcare professionals." Had these services been provided by healthcare professionals, the services would have had a value of $69,480.

On January 7, 1991, Richmond Memorial Hospital agreed to pay Thomas Dade $800,000 in full and complete settlement of his claims. The agreed amount was paid with court approval. "The services provided by the plaintiff and the value thereof was a factor in determining the amount of settlement." There are sufficient funds in the estate to pay for the services rendered by the plaintiff.

■ On appeal, the plaintiff points out that in *Browning v. Browning*, 2 Va. Dec. 710, 36 S.E. 108 (1899), *modified on reh'g*, 2 Va. Dec. 714, 36 S.E. 525 (1900), this Court recognized the right of a husband to be compensated under an implied contract for services rendered on a farm owned by the wife. The plaintiff acknowledges, however, that under our later decision in *Alexander, supra*, services rendered by one spouse to the other are "presumptively gratuitous and to uphold [implied] contracts would violate public policy."

The plaintiff argues that during the forty-two years since *Alexander* was decided, "there has been a major evolution of public policy as to the marital relationship." She lists the abolition of the defense of interspousal immunity in tort (Code § 8.01-220.1), the recognition of

marital rape as a criminal offense (Code § 18.2-61), and the introduction of equitable distribution into domestic relations law (Code § 20-107.3) as "examples of the changes in the law concerning the relationship of husbands and wives." Notably absent from the list, however, is any statutory enactment indicating a change in public policy concerning payment for services rendered by one spouse to the other.

The plaintiff argues further that "[a]s the common law has evolved in the area of implied contracts, it now seems clear that . . . there may be implied contracts for services beyond the scope of those demanded by the marital relationship." For this proposition, the only Virginia authority the plaintiff cites is *Warren Trucking Co. v. Chandler,* 221 Va. 1108, 1115, 277 S.E.2d 488, 493 (1981). There, the plaintiff says, this Court adopted the so-called "'modern rule,'" which, according to the plaintiff, "recognizes that there are services rendered [by a wife to her husband] beyond the scope of 'normal household duties' [for which] she is entitled to be compensated." The plaintiff opines that while *Warren* involved a claim against an employer in a worker's compensation case, "the same rule by correlation must apply to services rendered to a spouse for which a tortfeasor would be liable."

We disagree with the plaintiff about the *Warren* decision's effect on the outcome of this case. The issue in *Warren* was not whether the wife was entitled to recover the value of nursing care from her husband on implied contract but, rather, whether the husband could recover such value from his employer under Code § 65.1-88, part of the Workmen's Compensation Act (now § 65.2-603 of the Workers' Compensation Act), which required an employer to furnish an injured employee "necessary medical attention . . . as the nature of the injury may require."

We said that nursing care given an injured employee at home by a spouse is allowable under Code § 65.1-88 provided the employee proves, *inter alia,* that the care is of the type "usually rendered only by trained attendants and beyond the scope of normal household duties." 221 Va. at 1116, 277 S.E.2d at 493. The services rendered by the wife consisted of moderate nursing care at home, including "bathing, shaving, feeding, assistance in walking, help with braces, aid upon falling, driving and administering routine medication." *Id.* at 1118, 277 S.E.2d at 494. Finding that the care rendered by the wife "was not beyond the scope of normal household duties" and that none of the duties was "of the type usually rendered only by trained attendants," *id.,* we reversed the award of compensation to the employee and dismissed his application.

 Because the claim for compensation in *Warren* was based strictly upon statute, the case is not authority for the proposition that the law on implied contracts has evolved from the time *Alexander* was decided to the point that one spouse may now recover from the other for services rendered, whether the services are within or beyond the scope of normal household duties. We think that *Alexander* correctly states the law of Virginia as prohibiting such recovery in the absence of an express agreement and that if a different rule is desired, it should be left to the General Assembly to effect the change.

The plaintiff contends, however, that because the value of her services was included in the settlement her husband received, it would constitute unjust enrichment of his estate to disallow her claim. She argues that "[w]henever services are rendered and received, a contract of hiring or an obligation to pay compensation will generally be presumed unless the services are rendered between near relatives in which case the services are presumed to be gratuitous."

The plaintiff asserts that "[t]his presumption may be overcome by clear proof of circumstances from which payment is necessarily implied." She says she stands ready to supply the clear proof under the allegations of her amended motion for declaratory judgment that she rendered healthcare services to her husband, that the value of the services was a factor in determining the amount of the settlement for his injuries, and that he received payment for the services in the $800,000 he collected from the tortfeasor.

Concluding, the plaintiff opines that

> [i]f a spouse receives money for the value of the services provided by his spouse, it would be an unjust enrichment for him to be allowed to keep those funds in derogation of her claim. He cannot claim on the one hand that the wife's services are a medical expense . . . and then on the other argue that they are not an expense but gratuitous acts.

 But, in *Alexander,* we rejected the theory of unjust enrichment as a basis for implying a contract between husband and wife for services rendered by one to the other. In the course of our opinion, we noted that in some jurisdictions, a woman who has been induced by fraud to marry a man may recover upon an implied contract for the value of services rendered to him on the theory that he "has been enriched at her expense, and that equity demands she shall be made whole, — that is, that he should reimburse her for the actual money value of the services to him." 192 Va. at 10, 63 S.E.2d at 747.

Concerning the decisions finding an implied contract based upon the theory of unjust enrichment, we said that "[t]he reasoning in these cases appears to us to be unsound." *Id.* Continuing, we stated:

The authorities which allow a recovery on the theory of implied contract seem to us to place the marriage relation on too much of a commercial basis, and to treat the marital relation as any other business association, whereby each expects to obtain material advantage from the marriage. This is not, in our opinion, the true concept of the relation.

*Id.* at 11, 63 S.E.2d at 747.

This brings us to the plaintiff's final contention, *viz.*, that the trial court erred in refusing to allow her to amend her amended motion for declaratory judgment. The plaintiff's entire argument on this subject is as follows:

If by proper amendment plaintiff can state a case upon the facts entitling her to maintain an action at law, the opportunity to make such an amendment should be afforded.

The difficulty with this argument is that it overlooks the fact the plaintiff did not tender to the trial court a second amended motion for declaratory judgment or otherwise proffer what she would have alleged had she been allowed to amend. "As the record fails to show what amendments plaintiff sought to make, . . . we cannot determine whether the trial court abused its discretion in refusing plaintiff's [motion] for leave to amend [her] motion for [declaratory] judgment." *Niese v. Klos,* 216 Va. 701, 705, 222 S.E.2d 798, 801 (1976).[2]

For the reasons assigned, the judgment of the trial court will be affirmed.

*Affirmed.*

---

[2] In response to a question from the bench during oral argument, counsel for the plaintiff stated that the "facts" the plaintiff would have alleged had she been granted leave to amend could be found in "a very lengthy objection [that was typed on] the order sustaining the demurrer." However, the objection contains no allegations of fact, only argument, and, in any event, does not qualify as the tender of a second amended motion for declaratory judgment or a proffer of what the plaintiff would have alleged had she been allowed to amend.

JUSTICE LACY, dissenting.

The linchpin of the majority's conclusion barring an interspousal suit for recovery of the value of non-marital services is its declaration that *Alexander v. Kuykendall,* 192 Va. 8, 63 S.E.2d 746 (1951), "held that one spouse may not recover in implied contract for services rendered to the other." I disagree with the majority's conclusion because it is based on language in *Alexander* which was no more than dicta in relation to the dispositive issues in that case and which is even less applicable to the issues presented here.

*Alexander* was not a suit on an implied contract but a suit based on fraud. The parties had participated in a ceremony that the man represented as a true marriage ceremony, when in fact he knew it was not. The "marriage" was subsequently declared void. The woman then sued the man "to recover damages which she alleged resulted from an invalid marriage contract which he, by false representations, induced her to enter into with him." *Id.* at 9, 63 S.E.2d at 746.

As reflected in the record on file with the Court, the defendant sought to defeat the action by arguing that any recovery would allow the woman to be compensated twice because she had already received the benefits of support during the "marriage." Furthermore, he argued that when the marriage was declared void, he had no obligation of support, alimony was not available, and there were no martial rights in his estate because there had been no marriage.

The Court in *Alexander* framed the issues for its consideration as: (1) whether a woman "may maintain an action against a man, who, by misrepresentation, fraud and deceit, induced her to enter into what she thought was a valid marriage, but which in fact was void;" and (2) whether her pleading was sufficient to sustain an action based on misrepresentation and fraud. *Id.* at 9, 13, 63 S.E.2d at 747, 749. The Court concluded that such a suit could be maintained and that the putative wife's pleading was sufficient. *Id.* at 12, 14-15, 63 S.E.2d at 748, 749-50. Discussion in *Alexander* of matters extraneous to the validity of the cause of action based on fraud and misrepresentation or concerning the sufficiency of the pleading is no more than dicta.

The consideration of interspousal implied contracts is found in that part of the *Alexander* opinion examining various theories upon which *damages could be measured.* The Court itself raised the theory of implied contract as a measure of damages when it discussed theories used by other jurisdictions to award damages for fraud in litigation stemming from void marriages. The concept of interspousal implied contracts was rejected in *Alexander* only to the extent that deter-

mining damages on the basis of a contract theory was found to be inappropriate in a suit for fraud of the type brought by the plaintiff in *Alexander.* These considerations were not necessary to reach the decision made in that case regarding the ability of the plaintiff to maintain the action, and, in the instant case, the majority improperly relies on this discussion as authority for the proposition that the cause of action is barred.

Furthermore, even assuming for the moment that the discussion on implied contract in *Alexander* was not merely dicta, the rationales used to reject the contract measure of damages are not applicable to the case at hand. The Court rejected the contract theory as a measure of damages on two grounds. The Court first concluded that, even though a marriage did not in fact exist due to the fraud, the woman thought of herself as married, and that perception excluded the inference that her marital services were for hire. Without the expectation of reimbursement, there could be no implied contract. *Id.* at 10, 63 S.E.2d at 747.

The Court in *Alexander* did not list the services for which a wife would expect reimbursement, but the court's rationale was clearly limited to payment for "marital services." In the instant case, Mrs. Dade seeks compensation for services which she identifies as ones which were not the "result of the marital relationship *per se.*" Given the difference in the type of services at issue, this portion of the *Alexander* opinion does not provide binding precedent for the allegations made in this case.

The second reason the Court in *Alexander* rejected an implied contract measure of damages was that allowing such actions placed the marriage relation on "too much of a commercial basis." *Id.* at 11, 63 S.E.2d at 747. The desire to preserve the unique qualities of the marriage contract, and to protect that relationship from being equated with other contracts between individuals and business entities, was laudable at the time *Alexander* was decided and remains valid today. But neither *Alexander,* nor this case, implicates commercialization or disruption of an existing marriage relationship. The cited public policy is neither furthered nor relevant when the marriage has terminated, in this case through the death of a spouse. Again, in my opinion, this public policy rationale applicable to damages in a fraud case is not relevant to determining whether Mrs. Dade has pleaded a cause of action under the circumstances presented here.

While acknowledging instances in which the existence of the marital relationship does not preclude litigation between spouses, *see,*

*e.g.,* Code §§ 8.01-220.1 (abolishing interspousal tort immunity), 18.2-61 (marital rape), and 20-107.3 (equitable distribution), the majority does not consider these legislative initiatives sufficient indication of a legislative policy which would allow the type of action at issue here. Any such change, the majority concludes, must be undertaken by the General Assembly, and it has not done so. Even assuming that *Alexander* espoused the principles the majority draws from it, I disagree with the majority's perception of legislative policy and with its conclusion that this Court should not consider alteration of such a judicially-created principle.

The most striking example of legislative policies favoring the ability to assert claims for services between spouses is the equitable distribution statute. That statute directs that, on the termination of a marriage relationship, compensation based on contribution to the marital estate during its existence is a valid basis for determining the distribution of assets. If the marriage in this case had been terminated by divorce rather than by death, the $69,480 which Mr. Dade recovered as a result of Mrs. Dade's nursing services, presumably would be considered as part of the "marital share" as defined in Code § 20-107.3(H) and would be available for distribution as marital property. The legislative policy reflected in this statute is one which acknowledges the economic value of services rendered between spouses.

Finally, policy shifts in the areas of interspousal and intra-familial matters have not occurred solely through legislative activity. This Court abolished interspousal and parental tort immunity for personal injuries sustained as a result of motor vehicle accidents. *Surratt, Adm'r v. Thompson,* 212 Va. 191, 183 S.E.2d 200 (1971); *Smith v. Kauffman, Adm'r,* 212 Va. 181, 183 S.E.2d 190 (1971). In both cases, this Court rejected arguments that such litigation would lead to fraud and collusion, or disruption of the "peace and tranquility of the home," because "today's changed circumstances vitiate the underlying reason for" those immunity rules. *Smith,* 212 Va. at 185-86, 183 S.E.2d at 194; *Surratt,* 212 Va. at 192, 183 S.E.2d at 201. It was not until ten years later that the General Assembly acted, revoking interspousal tort immunity generally. Code § 8.01-220.1. The fact that no specific statute exists authorizing the type of suit at issue here should not be a bar to this proceeding. No statute prohibits the action; our jurisprudence does not preclude the action;[3] and, under the circumstances of this case, no public policy of discouraging commercializa-

---

[3] My research revealed no other appellate case in this Commonwealth either precluding a cause of action like that asserted by Mrs. Dade here or relying on *Alexander* for that proposition.

tion or friction in the marriage relationship is furthered by prohibiting this action from going forward.

The degree to which non-marital services are provided between spouses today has greatly increased since 1951 when Alexander was decided. Professional services in such areas as medicine, dentistry, accounting, and law, to name but a few, may be and often are provided by one spouse to another.[4] Like those realities considered relevant to this Court in 1971 in *Surratt* and *Smith,* the reality of interspousal services, particularly services beyond the marital relationship *per se,* should be reflected in the jurisprudence of this Commonwealth. Mrs. Dade seeks to recover, not property created by Mr. Dade during his lifetime, but property which was created solely by virtue of her actions, actions which she alleges are beyond those included in "marital services." Whether Mrs. Dade would prevail is not clear, but she should have the opportunity to present her case. Accordingly, I would reverse the order of the trial court and remand the case for further proceedings.

JUSTICE KEENAN, with whom JUSTICE WHITING joins, dissenting.

I believe that Dade has stated a valid cause of action and that the majority's reliance on *Alexander* is misplaced.

I agree with Justice Lacy's analysis that the majority relies on mere dicta from *Alexander.* Further, the dicta derived from facts wholly dissimilar to those before us. The opinion in *Alexander* speaks of "performing the normal duties of a [spouse]," "presiding over the household," "[l]abor in housekeeping," "keeping [a] house," and providing "the society and assistance of a [spouse]." 192 Va. at 10-12, 63 S.E.2d at 747-48. Here, however, Dade has alleged that she provided health care services "in lieu of provision of same by healthcare professionals," services that had an alleged market value of $69,480. These allegations are sufficient to place Dade's cause of action beyond the scope of the activities described in *Alexander.*

Instead, Dade's allegations are similar to those described in *Warren,* in which this Court considered services alleged to be "of the type usually rendered only by trained attendants and beyond the scope of

---

[4] In fact, although child care may normally be considered part of "marital services," in a recent case the settlement received by a severely injured wife was valued based on the premise that reimbursement to the husband of over $11,000 for child care expenses he paid was an independent obligation. *Bohle v. Henrico County School Board,* 246 Va. 30, 32, 431 S.E.2d 36, 40 (1993).

normal household duties." 221 Va. at 1116, 277 S.E.2d at 493. Although the issue in *Warren* was whether such services could be "necessary medical attention" within the meaning of Code § 65.1-88 (now Code § 65.2-603), this Court's decision was premised on the principle that care rendered by a spouse beyond the scope of "normal household duties" is not subject to the presumption that it has been rendered gratuitously. *See* 221 Va. at 1115-16, 277 S.E.2d at 493. The majority fails to acknowledge that *Warren* drew such a distinction between services within and services beyond the scope of "normal household duties."

Moreover, the majority chooses to embrace the logic of the dicta in *Alexander* despite clear precedent to the contrary. In *Browning v. Browning*, 2 Va. Dec. 710, 36 S.E. 108 (1899), *modified on reh'g*, 2 Va. Dec. 714, 36 S.E. 525 (1900), a husband was allowed to recover for the value of work done on his wife's farm, for which "the estate of Mrs. Browning received the benefit." *Id.* at 711, 36 S.E. at 108. Although no express contract between the spouses was proved, the Court held that it "sufficiently appear[ed] that Browning expected to be remunerated in some way for the work done by him." *Id.* at 712, 36 S.E. at 108. The majority inexplicably declines to follow this precedent.

The majority next dismisses Dade's argument of unjust enrichment, citing the objection in *Alexander* that this would "place the marriage relation on too much of a commercial basis." However, this justification is unpersuasive under the facts before us. Here, as in *Browning*, but in contrast to *Alexander*, the enrichment has been received not by the spouse, but by the spouse's heirs. Thus, commercialization of the marital relationship is not implicated in this claim.

Dade's allegations sufficiently show that her services have conferred a benefit on her husband's heirs that would be unjust for them to retain. She has alleged that those services were provided "in lieu of" services procured from health care professionals, and that her services were factored into the amount of the malpractice settlement received by her husband's estate. These allegations show that her services preserved and increased the amount of the estate, because the estate incurred no corresponding liability to discharge the decedent's debts for professional health care. Thus, the estate purportedly has reaped the benefit of Dade's labor, retaining a fund to be enjoyed by her husband's heirs.

The equitable principle has long been established that a person shall not be allowed to enrich himself unjustly at the expense of another. *Rinehart v. Pirkey*, 126 Va. 346, 351, 101 S.E. 353, 354

(1919). "It is a general rule of law that he who gains the labor or acquires the property of another must make reasonable compensation for the same." *Ricks v. Sumler,* 179 Va. 571, 577, 19 S.E.2d 889, 891 (1942). The majority fails to acknowledge these principles in the decision it reaches today.

For these reasons, I would reverse the trial court's judgment and remand the case for further proceedings on Dade's amended motion for declaratory judgment.