COURT OF APPEALS OF VIRGINIA


Present:  Judge Humphreys, Senior Judges Hodges and Overton
Argued at Chesapeake, Virginia


JAMES M. BLAKER
                                    MEMORANDUM OPINION* BY
v.    Record No. 1010-99-1          JUDGE NELSON T. OVERTON
                                         JUNE 6, 2000
PERRY'S HEATING, AIR AND ELECTRIC, INC.
and
HARTFORD CASUALTY INSURANCE COMPANY


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            W. Mark Broadwell (Forbes & Broadwell, on
            brief), for appellant.

            F. Nash Bilisoly (Kelly O. Stokes;
            Vandeventer Black, L.L.P., on brief), for
            appellees.


     On appeal from a decision of the Workers' Compensation

Commission, James M. Blaker contends that the commission erred

in finding (1) that he unjustifiably refused to attend a medical

examination, as directed by Code § 65.2-607(A), scheduled on

July 15, 1997, (2) that Perry's Heating, Air and Electric, Inc.,

and its insurer did not engage in improper medical management by

scheduling the July 15, 1997 appointment, and (3) that Blaker

failed to adequately market his residual work capacity.  The

record supports the findings of the commission, and we affirm.

_____

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

## I.  Background

On appeal, we view the evidence in the light most favorable to the party prevailing below.  See Crisp v. Brown's Tysons Corner Dodge, Inc., 1 Va. App. 503, 504, 339 S.E.2d 916, 916 (1986).  The findings of the commission, if based on credible evidence, are conclusive and binding on this Court.  See Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986).  "[W]e follow the settled rule that the construction accorded a statute by public officials charged with its administration is entitled to be given weight by the courts.  Indeed, this Court has said that the commission's construction of the Workers' Compensation Act should be given 'great' weight."  Bohle v. Henrico County School Board, 246 Va. 30, 35, 431 S.E.2d 36, 39 (1993) (citations omitted).

Blaker, an electrician, suffered multiple injuries to his mouth and neck while helping a co-worker on November 4, 1994.  The co-worker inadvertently struck Blaker in the face with a hammer.  He received an award for those injuries from the commission.  Perry's filed an application in July 1997 for a hearing to terminate or suspend benefits based upon the grounds that Blaker had returned to work and that he had failed to attend a medical appointment with his treating physician.  After the hearing was docketed, Blaker broke his leg in a non-work-related injury.  He was released for work on January 7,

-

1998, and filed an application for benefits as of January 8, 1998.

Both applications were heard in a single hearing. At the hearing, Blaker admitted that he had returned to work for a time, but defended against Perry's position by asserting that Perry's had engaged in improper medical management with regards to the July 1997 medical appointment. The deputy commissioner refused to rule on the issue of improper medical management. He found that Blaker had unjustifiably refused to attend the appointment and that Blaker's refusal to seek employment outside of his union constituted a failure to adequately market his residual capacity. The full commission affirmed.

## II.  Refusal to Attend Examination

Blaker contends that the commission erred in finding that he refused to attend the July 15, 1997 medical appointment. He argues that he had no notice that the appointment was to be an "independent medical examination" and, therefore, his attendance was not mandatory under Code § 65.2-607. Code § 65.2-607 provides, in relevant part:

> A.  After an injury and so long as he claims compensation, the employee, if so requested by his employer . . . , shall submit himself to examination, at reasonable times and places, by a duly qualified physician or surgeon designated and paid by the employer . . . .
> B.  If the employee refuses to submit himself to or in any way obstructs such examination requested by and provided for by the employer, his right to take or prosecute

-

any proceedings under this title shall be suspended until such refusal or objection ceases and no compensation shall at any time be payable for the period of suspension unless in the opinion of the Commission the circumstances justify the refusal or obstruction.

Blaker admits that he received notice of the July 15, 1997 appointment. He did not attend the appointment, nor did he notify the employer, insurance company, or commission of his reasons for refusing to attend the appointment. Blaker argues that Dr. Byrd was no longer his treating physician, and so the appointment was improper medical management. See infra. The fact that he did not consider Dr. Byrd to be his treating physician any longer and that his course of treatment with Dr. Byrd had ended, coupled with the contents of the notification letter, support the commission's finding that Blaker was on notice that the July 15, 1997 appointment was an examination requested by the employer, and not an attempt by the employer to force Blaker into a renewed course of treatment with Dr. Byrd.

### III. Improper Medical Management

Blaker further argues that the July 15 appointment with Dr. Byrd was improper medical management by Perry's. For the reasons stated above, the record supports the commission's finding that the appointment was not a forced course of treatment, but rather an examination requested by Perry's under Code § 65.2-607. Both parties admit that Dr. Byrd had not anticipated seeing Blaker for further treatment, as Blaker had

-

reached maximum medical improvement based on his decision to treat the problem medically rather than surgically.  Nothing in the record, aside from Blaker's conclusory allegations, supports a finding that Perry's was attempting to force Blaker to use Dr. Byrd as his treating physician and to renew treatment with him.

IV.  Failure to Adequately Market Residual Capacity

Blaker contends that the commission erred in finding that he failed to market his residual capacity when seeking employment.  Blaker joined a union after his injury and, once released to light duty work, sought employment only through the union channels.  Blaker argues that he was required to do this or risk losing his status as a union member in good standing.

A claimant who is released to light-duty work must prove that he has made a reasonable effort to market his remaining work capacity during any period for which benefits are sought. See Washington Metro. Transit Auth. v. Harrison, 228 Va. 598, 601, 324 S.E.2d 654, 655 (1985).

> In determining whether a claimant has made a reasonable effort to market his remaining work capacity, we view the evidence in the light most favorable to [Perry's], as [the employer] was the prevailing party before the commission. However, where there is no conflict in the evidence, as here, the question of the sufficiency of the evidence is one of law.

National Linen Service v. McGuinn, 8 Va. App. 267, 270, 380 S.E.2d 31, 32 (1989) (citations omitted).

-

Blaker has worked as an electrician since 1969. At the time of his compensable injury, he was working as an electrician in a non-union job. He joined the union of his own volition after the injury, in June 1997. Once released to light-duty work, he confined his search for employment to those jobs approved by the union; he telephoned the union employment "hot line" a few times per week and visited the local union hall every few weeks.

This case is distinguishable from U.S. Air, Inc. v. Joyce, 27 Va. App. 184, 497 S.E.2d 904 (1998). In Joyce, the employee had worked for U.S. Air for seventeen years as a mechanic. His employment contract was under a union contract, which prohibited employees from seeking work outside of U.S. Air. After his injury, Joyce could not return to his previous job, and so requested a release from the employer to seek outside employment without penalty of losing that union job. U.S. Air refused.

In Joyce's case, his very employment was tied to the union contract. The employer prohibited Joyce from seeking outside employment and then argued that Joyce had refused to seek such employment. In Blaker's case, he joined the union of his own choice, after the injury, and then argued that such choice limited his employment options. Under the facts and circumstances of this case, we cannot say as a matter of law that Blaker's evidence sustained his burden of proving that he

-

made a good faith, reasonable effort to market his residual work capacity.

The judgment of the commission is affirmed.

<u>Affirmed.</u>