COURT OF APPEALS OF VIRGINIA


Present:    Judges Frank, Humphreys and Millette
Argued at Chesapeake, Virginia


HERBERT CLEMENTS & SONS, INC. AND
  WCAMC CONTRACTORS GROUP
  SELF-INSURED ASSOCIATION
                                                              OPINION BY
v.        Record No. 3028-07-1               JUDGE LeROY F. MILLETTE, JR.
                                                              JULY 29, 2008
RANDOLPH ALLEN HARRIS


                FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

                    Angela F. Gibbs (Frederick T. Schubert, II; Midkiff, Muncie &
                    Ross, P.C., on brief), for appellants.

                    Byron A. Adams for appellee.


        Herbert Clements & Sons, Inc. and WCAMC Contractors Group Self-Insured

Association (collectively, employer) appeal from the December 11, 2007 opinion of the Virginia

Workers' Compensation Commission (the commission), reversing the deputy commissioner's

May 3, 2007 opinion and awarding Randolph Allen Harris (claimant) benefits due to his right

shoulder injury and reinstating benefits for claimant pursuant to its January 3, 2005 award.  The

commission awarded claimant's claim for payment of pain medication and authorization for right

shoulder arthroscopy, which employer defended on the ground that claimant's shoulder

condition, medication, and treatment were unrelated to the compensable work injury of June 22,

2004.  The commission also denied employer's application for termination of claimant's

outstanding award, which asserted claimant was released to pre-injury work on August 16, 2006.

On appeal, employer contends the commission erred in (1) determining claimant's shoulder

injury was causally related to his industrial accident, and (2) determining claimant was not able to return to his pre-injury employment.[1]  Finding no error, we affirm the commission's opinion.

## I.  BACKGROUND

On employer's appeal from the decision of the commission, we view the evidence in the light most favorable to claimant, the prevailing party below.  United Airlines, Inc. v. Sabol, 47 Va. App. 495, 498, 624 S.E.2d 692, 693 (2006).  "[W]e are bound by the commission's factual findings where those findings are supported by credible evidence in the record."  Tomes v. James City Fire, 39 Va. App. 424, 430, 573 S.E.2d 312, 315 (2002).  "'The fact that there is contrary evidence in the record is of no consequence.'"  Allen & Rocks, Inc. v. Briggs, 28 Va. App. 662, 673, 508 S.E.2d 335, 340 (1998) (quoting WLR Foods v. Cardosa, 26 Va. App. 220, 230, 494 S.E.2d 147, 152 (1997)).  So viewed, the pertinent facts are as follows.

Claimant was employed as a plumbing repair mechanic when he sustained an accidental injury on June 22, 2004 while attempting to remove a septic tank lid with his right hand.  The lid snapped in two pieces, thereby jolting claimant forward and breaking the third and fourth vertebrae in his neck.  Employer accepted claimant's injury as compensable under the Virginia Workers' Compensation Act (the Act), and the commission entered an award providing claimant temporary total disability compensation benefits beginning June 25, 2004.

---

[1] Employer's counsel pared down its argument to these two issues at oral argument and conceded they are factual issues.  On brief, employer argued the commission erred in (1) dismissing the opinion of the physician who performed an independent medical examination on claimant; (2) finding claimant's shoulder condition and treatment were related to his accidental injury; (3) holding employer responsible for claimant's diagnostic shoulder surgery; (4) finding the deputy commissioner overlooked claimant's back and neck injury when determining claimant could return to his pre-injury work; (5) finding claimant could not return to his pre-injury work; and (6) reinstating benefits pursuant to the commission's award.  "Each point [of error] relates to the [c]ommission's findings that [] employer did not prove [claimant] was released to pre-injury work and that [claimant] proved entitlement to the proposed surgical procedure."  Employer's Br. 14.

On August 6, 2004, Dr. Savas performed cervical spinal surgery on claimant. Four months later, in a December 28, 2004 office note, Dr. Savas recorded: "[Claimant] continues to have some right focal shoulder pain and some intermittent referred pain in his right shoulder toward his right neck trapezial region and down toward his mid humerus. . . . There may be a component of shoulder pathology that is now manifested as his cervical radicular symptoms have improved." After conducting magnetic resonance imaging (MRI) on claimant's shoulders, Dr. Savas found Superior Labrum from Anterior to Posterior (SLAP) lesions on both shoulders and referred claimant to Dr. Wilhelm, an orthopaedic surgeon, for an evaluation of shoulder pain, especially in claimant's right shoulder.[2]

Dr. Wilhelm's impression of claimant's condition on October 26, 2005 was "[b]ilateral shoulder pain, posttraumatic, *associated with his worker's comp injury*." (Emphasis added). Dr. Wilhelm noted: "[T]he degree and extent to which [claimant's] pain was symptomatic was out of proportion to the pain for [sic] expected for a SLAP lesion. I felt that the pain was primarily neurogenic in origin, and I recommended an evaluation by a neurologist and possible pain clinic referral."

Dr. Wilhelm then referred claimant to Dr. Isaacs, a neurologist, for evaluation.[3] On July 18, 2006, at his last appointment with claimant, Dr. Isaacs noted: "[Claimant] was advised to return to Dr. Wilhelm for any shoulder complaints. No further treatment is offered from this office." Subsequently, by letter dated August 16, 2006, Dr. Isaacs responded to a request from

---

[2] In an office note dated August 16, 2005, Dr. Savas wrote, "I explained to Marge [Bailey, with the commission,] that we will proceed with further shoulder evaluation by a shoulder specialist. [Claimant] can then return to my office following the information from his shoulder consultation."

[3] In a letter dated December 22, 2005, Dr. Wilhelm wrote, "I believe that the work related injury of 6/22/04 is related to the current pain that [claimant] is experiencing in both of his shoulders. I am requesting that you authorize [claimant] to see Dr. Ed Isaacs, neurologist in Richmond, VA to help us in sorting out the diagnosis."

employer that claimant be released back to work without limitations, and wrote: "From the basis of [claimant's] physical examination and findings, I see no way I could substantiate a disability from a work-related injury. From that standpoint, I referred him back to his orthopedic surgeon *in the hopes that he would either make a firm diagnosis* or release [claimant] back to work." (Emphasis added).

Dr. Wilhelm recommended pain medication and right shoulder arthroscopy. In the last office note by Dr. Wilhelm contained in the record, dated August 17, 2006, he wrote:

> Posttraumatic right upper extremity pain. [Claimant] may have a SLAP lesion. The mechanism of injury would certainly be appropriate, though the possibility of having bilateral SLAP lesions would be quite uncommon, though it is only the right upper extremity which is most symptomatic at this time. . . . I have recommended that [claimant] have right shoulder arthroscopy and if he did have a SLAP lesion, it could be repaired at that time with a biceps tenodesis or intraarticular repairs indicated.

Dr. Wilhelm also reiterated, "I do feel that the pain which [claimant] has is directly related to the [workers' comp] injury he describes."

On April 17, 2007, Dr. Cohn, an orthopedic surgeon, performed an independent medical examination on claimant. Dr. Cohn deferred to Dr. Savas regarding claimant's work restrictions and recommended claimant be put on significant restrictions regarding his right upper extremity. Previously, on June 9, 2005, a physical therapist administered a functional capacities evaluation and found "[claimant] did not demonstrate the ability to perform essential job tasks at [that] time."

On September 12, 2006, in the midst of claimant's treatment, he submitted a claim seeking payment for pain medication and right shoulder arthroscopy pursuant to Dr. Wilhelm's recommendation. Employer contested the claim on the ground that claimant's shoulder condition, and any medication or surgery to treat the condition, were unrelated to claimant's June 22, 2004 injury. On January 24, 2007, employer applied for a hearing, seeking termination of

- 4 -

the commission's outstanding award on the basis that claimant was released to pre-injury work on August 16, 2006 per Dr. Isaacs' letter, which stated: "The only thing I can do is refer back to my own records and evaluation, and from that standpoint, I can release [claimant] back to work without limitations."[4]

The deputy commissioner heard both matters on April 26, 2007. On May 3, 2007, the deputy commissioner rendered her opinion, denying claimant's claim and terminating the commission's award upon the conclusion that claimant was released to pre-injury work as of August 16, 2006. The deputy commissioner found the requested pain medication and right shoulder arthroscopy did not relate to claimant's June 22, 2004 injury. Claimant requested a review by the full commission, and the commission reversed the deputy commissioner's opinion. This appeal by employer followed.

## II. ANALYSIS

Employer argues the commission erred in finding claimant's shoulder condition and treatment were causally related to his accidental injury.[5] Employer further contends that, "[t]o reach the finding that the employer was responsible for the diagnostic [arthroscopy] procedure, the [c]ommission implicitly found that the claimant's shoulder complaints were at least possibly causally related to the work injury" and that such finding was made in error. We disagree with

---

[4] "Where, as here, causal connection between an industrial accident and disability has been established by the entry of an award, an employer has a right to apply for termination of benefits upon an allegation that the effects of the injury have fully dissipated and the disability is the result of another cause." Celanese Fibers Co. v. Johnson, 229 Va. 117, 120, 326 S.E.2d 687, 690 (1985).

[5] Employer contests its responsibility for the medical services sought by claimant on the basis that under Code § 65.2-603, employer's responsibility depends upon "whether the medical service[s] [are] causally related to the industrial injury." Volvo White Truck Corp. v. Hedge, 1 Va. App. 195, 199, 336 S.E.2d 903, 906 (1985).

employer's argument, as there was credible evidence to support the commission's findings of causation and that claimant was entitled to diagnostic right shoulder arthroscopy.

Causation

In determining whether credible evidence exists to support the commission's findings of fact, "'the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses.'" Pruden v. Plasser American Corp., 45 Va. App. 566, 574-75, 612 S.E.2d 738, 742 (2005) (quoting Wagner Enterprises, Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991)).  The commission's determination of causation is a finding of fact.  Lee County School Bd. v. Miller, 38 Va. App. 253, 260, 563 S.E.2d 374, 377 (2002).  "[U]nless we can say as a matter of law that claimant failed to sustain [his] burden of proving causation, the commission's findings are binding and conclusive upon us."  Id. at 260-61, 563 S.E.2d at 378 (citing Marcus v. Arlington County Bd. of Supervisors, 15 Va. App. 544, 551, 425 S.E.2d 525, 530 (1993)).

The record contains ample evidence that claimant's shoulder condition was caused by his June 22, 2004 injury, including office notes by his treating physicians, Dr. Savas and Dr. Wilhelm.  On December 24, 2004, Dr. Savas noted the possible presence of shoulder pathology as claimant's cervical radicular symptoms had improved following cervical spinal surgery.  On October 26, 2005, Dr. Wilhelm identified "[b]ilateral shoulder pain, posttraumatic, associated with [claimant's] worker's comp injury."  Again, on August 17, 2006, Dr. Wilhelm reaffirmed he believed claimant's pain was directly related to his accidental injury.  With substantial evidence in the record to support the commission's finding that claimant's shoulder condition and treatment were causally related to his accidental injury, we affirm its finding of causation.

Diagnostic Procedure

We likewise affirm the commission's decision to hold employer responsible for claimant's diagnostic right shoulder arthroscopy.[6] The commission's construction of the Act is entitled to great weight on appeal. Gray v. Graves Mt. Lodge, 26 Va. App. 350, 353, 494 S.E.2d 866, 868 (1998) (citing Bohle ex rel. Majette v. Henrico County Sch. Bd., 246 Va. 30, 35, 431 S.E.2d 36, 39 (1993)). Pursuant to Code § 65.2-603(A)(1), an employer must provide "necessary medical attention" to an employee injured in an industrial accident for "as long as necessary after an accident." The commission has consistently interpreted "necessary medical attention" to include reasonable and necessary diagnostic procedures, even though ultimate causation of the condition has not been firmly established and even if the procedures reveal that the condition is not in fact related to the compensable injury.[7] "Code § 65.2-603 should be construed liberally in favor of the claimant, in harmony with the Act's humane purpose." Papco Oil Co. v. Farr, 26 Va. App. 66, 74, 492 S.E.2d 858, 861-62 (1997).

An employer may be held responsible for the cost of a diagnostic procedure undertaken to determine (1) whether the claimant's condition is causally related to his compensable injury; (2) the extent of the injury resulting from an industrial accident; and (3) whether the claimant requires additional medical treatment for the injury.[8] An employer's responsibility for a

---

[6] Employer does not presently contest responsibility for any *treatment* of claimant's SLAP lesions. Its argument is solely as to the right shoulder arthroscopy for the purpose of diagnosis of claimant's condition.

[7] See generally Lilliard v. Hooker Furniture Corp., No. 222-50-67 (Va. Workers' Comp. Comm'n May 17, 2006); Patterson v. Ryder Integrated Logistics Inc., No. 199-67-76 (Va. Workers' Comp. Comm'n Mar. 30, 2001). Furthermore, Rule 5 of the commission provides that "[a] claimant under an award shall not be liable for the cost of medical services payable under the Act."

[8] See generally Johnson v. Fed. Mogul Prods., Inc., No. 193-16-25 (Va. Workers' Comp. Comm'n Jan. 9, 2001); King v. Pinkerton, Inc., No. 214-64-43 (Va. Workers' Comp. Comm'n

diagnostic procedure is contingent upon a showing that the procedure is reasonable and necessary, the approved treating physician has authorized the procedure,[9] and the medical records indicate a possible causal connection between the claimant's condition and compensable injury.[10]

It is the claimant's burden to prove that a possible causal relationship exists and that the treating physician has authorized the diagnostic procedure for which the claimant seeks payment by the employer. The "reasonable and necessary" element is proven by a showing that the diagnostic procedure was recommended by the claimant's approved treating physician.[11] We find credible evidence in the record to support the commission's finding that claimant satisfied his burden of proving entitlement to diagnostic right shoulder arthroscopy. Having affirmed the commission's finding that claimant's shoulder condition was causally related to his compensable injury, the first element of possible causal relationship has been met. Additionally, claimant's treating physician, Dr. Wilhelm, clearly recommended right shoulder arthroscopy in his August 17, 2006 office note. We therefore uphold the commission's determination that employer is responsible for the cost of the diagnostic procedure.

---

Nov. 29, 2004); Hatch v. J M D Stone Co., Inc., No. 183-10-48 (Va. Workers' Comp. Comm'n Apr. 20, 1998).

[9] See generally Trail v. Curtis Deacon Siding & Guttering Contractors, Inc., No. 191-19-98 (Va. Workers' Comp. Comm'n Oct. 17, 2001).

[10] See generally Toepke v. Anheuser Busch Co., Inc., No. 222-44-58 (Va. Workers' Comp. Comm'n Jan. 3, 2007).

[11] See generally Rojas v. Residence Inn, No. 194-67-09 (Va. Workers' Comp. Comm'n Sept. 26, 2003). However, where a treating physician has prescribed a specific diagnostic procedure, which an employer denies on the sole basis that the procedure is not reasonable or necessary, the burden shifts and the employer must prove by a preponderance of the evidence that the procedure is neither reasonable nor necessary. Id. at *10-11. Employer does not argue on appeal that the right shoulder arthroscopy is unreasonable or unnecessary.

Pre-Injury Work

Employer further contends the commission erred in finding claimant could not return to his pre-injury work. "General principles of workman's compensation law provide that 'in an application for review of any award on the ground of change in condition, the burden is on the party alleging such change to prove his allegations by a preponderance of the evidence.'" Great Atl. & Pac. Tea Co. v. Bateman, 4 Va. App. 459, 464, 359 S.E.2d 98, 101 (1987) (quoting Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 438-39, 339 S.E.2d 570, 572 (1986)). "Matters of weight and preponderance of the evidence, and the resolution of conflicting inferences fairly deducible from the evidence, are within the prerogative of the commission and are conclusive and binding" on this Court. Kim v. Sportswear, 10 Va. App. 460, 465, 393 S.E.2d 418, 421 (1990) (citation omitted). Therefore, the decision of the commission is conclusive and binding on appeal unless employer's evidence established as a matter of law that claimant was fully capable of performing his pre-injury employment. See Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

"[T]he normal and customary manner in which the pre-injury work was performed governs the determination of whether a claimant is able to return to that employment." Clinchfield Coal Co. v. Parrott, 22 Va. App. 443, 447, 470 S.E.2d 597, 599 (1996). Claimant's pre-injury employment as a plumbing repair mechanic entailed strenuous manual labor, including lifting hot water heaters weighing 125 to 150 pounds, toilets weighing 75 to 100 pounds, and cast iron boilers weighing 500 to 1,500 pounds. Claimant had to crawl under homes, climb into attics, and operate a truck. Claimant used heavy 26" pipe wrenches and other tools necessitating great strength and two hands to operate. On June 9, 2005, the physical therapist who administered a functional capacities evaluation found claimant was not able to perform his essential job tasks at that time. In a June 22, 2005 office note, Dr. Savas stated,

"[claimant] continues to have intermittent neck and radiating right arm pain and a feeling of decreased strength in the right arm.  Because of these continued symptoms, he does not feel he is ready or able to return to his preinjury work without restrictions."  On April 17, 2007, Dr. Cohn conducted an independent medical evaluation per employer's request and determined that "[i]n regard to work restrictions, [he] would base [claimant's] present work restrictions upon [claimant's] postoperative spinal fusion, and would defer to Dr. Savas regarding that."  The record does not contain any documentation reflecting a release by Dr. Savas to pre-injury employment.  After weighing all the evidence, the commission found employer did not satisfy its burden of proving by a preponderance of the evidence that claimant was fully capable of performing his pre-injury employment.  Upon review, we hold employer's evidence did not establish as a matter of law that claimant could perform his pre-injury employment and thus, we are bound by the commission's decision.

Finding credible evidence in the record to support the commission's conclusion that claimant is not fully able to perform the duties of his pre-injury employment, we hold the commission did not err in reinstating temporary total disability benefits pursuant to the commission's January 3, 2005 award.  See Celanese Fibers Co. v. Johnson, 229 Va. 117, 120-21, 326 S.E.2d 687, 690 (1985).

### III.  CONCLUSION

For the foregoing reasons, the opinion of the commission is affirmed.

Affirmed.